**HEADRICK OUTDOOR, INC., Appellant,**

v.

**Garland MIDDENDORF, Respondent.**

**No. WD 50155.**

Missouri Court of Appeals,
Western District.

Oct. 3, 1995.

Thomas A. Krause, Osage Beach, for appellant.

Thomas M. Harrison, Mark A. Stephens, Columbia, for respondent.

Before FENNER, C.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

FENNER, Chief Judge.

Appellant Headrick Outdoor, Inc., appeals from a judgment against it and in favor of Garland Middendorf. Headrick Outdoor contends on appeal that the trial court erred by allowing Mr. Middendorf to testify as to his intent not to be personally liable on a contract with Headrick Outdoor because the contract was clear and unambiguous.

The record reflects that on November 26, 1986, Lewis Rigdon Corporation (Lewis Rigdon) and Osage Outdoor Advertising, Inc. (Osage), entered into an Advertising Agreement (the contract) for the lease of a billboard advertisement. Under the terms of the contract, Osage agreed to erect and maintain an advertising billboard which met the specifications of Lewis Rigdon. In return, Lewis Rigdon agreed to pay Osage $30,600.00, payable in 36 monthly installments of $850.00 each. The contract could

then be extended on a monthly basis, at the rate of $850.00 per month.

Appellant Headrick Outdoor, Inc., is a corporation engaged in the business of leasing outdoor advertising billboards. On September 1, 1988, Headrick Outdoor purchased the assets of Osage. Among the assets purchased were the rights and obligations of Osage under the contract entered into between Osage and Lewis Rigdon. Pursuant to the terms of the contract, Headrick Outdoor continued to maintain, repair, and light the billboard. Lewis Rigdon continued to make monthly payments directly to Headrick Outdoor.

Lewis Rigdon stopped making payments under the contract on January 29, 1990. Headrick Outdoor maintained the billboard until October, 1990, when it removed it because of Lewis Rigdon's failure to pay.

On August 18, 1992, Headrick Outdoor filed a petition against Garland and Sydney Middendorf seeking payment of the amount due under the contract plus interest, and attorney's fees.[1] Headrick Outdoor contended that both Garland and Sydney Middendorf were personally liable under the contract. In support of its claim, Headrick Outdoor pointed to the fact that Garland and Sydney Middendorf were named as parties to the contract. The terms of the contract are contained on a single page. The first paragraph of the contract names "Lewis Rigdon Corporation, d/b/a Steak 'N Shake, Grandview, and Garland Middendorf and Sydney Middendorf" as parties to the agreement.

Headrick Outdoor also pointed to the fact that extra signature lines were provided for Garland and Sydney Middendorf to sign the contract in their individual capacity. At the bottom of the page, typewritten signature lines were provided for president and secretary of Lewis Rigdon Corporation. Mr. Middendorf signed the contract as the president of Lewis Rigdon, and Sydney Middendorf signed as the secretary. Directly across from these signature lines were additional lines labeled only as "Garland Middendorf" and "Sydney Middendorf." Headrick Outdoor contends that these additional lines

were provided for them to sign in their individual capacity. Mr. Middendorf signed the contract on this line as "Garland Middendorf, President." Ms. Middendorf did not sign the contract on this additional line.

The trial court determined that Ms. Middendorf was not personally liable, because she only signed the contract in her corporate capacity, and granted her motion for summary judgment. The trial against Mr. Middendorf commenced on June 20, 1994.

It was Mr. Middendorf's position during the trial that he was not personally liable under the contract. Mr. Middendorf attempted to testify regarding his intent when he signed the contract in the manner he did. Over appellant's objections, the trial court determined that the contract was ambiguous as to Mr. Middendorf's personal liability and allowed Mr. Middendorf to testify.

Mr. Middendorf testified that he entered into the contract solely in his representative capacity as the president of Lewis Rigdon. He also testified that he told Bruce Elliott, the salesperson for Osage who presented the contract to Mr. Middendorf that he did not intend to enter into the contract as an individual. Mr. Middendorf testified that he requested Mr. Elliott to cross out the extra signature line, but that Mr. Elliott refused to do so. After Mr. Middendorf signed the contract with the notation "President" after his name, Mr. Elliott agreed to take the contract back to his home office to see "how it flies." The only subsequent correspondence that Mr. Middendorf received from Osage was a copy of the contract signed by Janet Russell on behalf of Osage.

The trial court entered judgment in favor of Mr. Middendorf finding that Mr. Middendorf did not agree to be personally liable under the contract. This timely appeal followed.

On appeal, Headrick Outdoor contends the trial court erred when it allowed Mr. Middendorf to testify regarding his intent not to be personally liable when he signed the contract and his conversations with Mr. Elliott, the salesman for Osage. Headrick Outdoor contends this evidence was not admissible

---

1. Lewis Rigdon was not named as a party be-    cause it had applied for Chapter 11 bankruptcy.

because the contract was unambiguous as to whether Mr. Middendorf was personally liable in that Mr. Middendorf was listed as a separate party and signed on a separate signature line. Mr. Middendorf contends the contract is ambiguous as to his personal liability because he only signed it in his corporate capacity as the president of Lewis Rigdon.

■ Review is under the standard established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court's decision must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

■ It is well established in Missouri that the parol evidence rule bars the admission of extrinsic evidence unless a contract is ambiguous. *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 361 (Mo. banc 1991). A determination as to whether a contract is ambiguous is a question of law to be decided by the trial court. *Id.* If it is determined that a contract is ambiguous then "the cardinal principal is to determine the intent of the parties. . . ." *Id.* In order to do this, the court will look at extrinsic evidence including the "facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties." *Id.*

■ The general rule regarding liability incurred by an individual who signs a contract on behalf of a principal is that the principal is liable, and not the individual, where the principal is disclosed and the capacity in which the individual signs the contract is evident, such as by putting "president" or "secretary" after his signature. *Wired Music, Inc. of the Great Midwest v. Great River Steamboat Co.*, 554 S.W.2d 466, 468 (Mo.App.1977). The presumption in such cases is that "it was the agent's intention to bind his principal and not to incur personal liability, and an agent will not be bound personally, except upon clear and explicit evidence of an intention to be bound." *Id.*

■ An ambiguity as to whether an individual is personally liable is created where the form of the signature is inconsistent with the assumption of personal liability under the terms of the agreement. *Id.* For example, in *Wired*, the contract contained a personal guaranty clause that "[t]he individual signing this agreement for the subscriber guarantees that all of the above provisions shall be complied with." However, the party signed it and added the words "Pres." and "For the Corporation" after his name. The court held that the inconsistency between the guaranty clause and the form of the signature created an ambiguity which required the introduction of extrinsic evidence to determine the intent of the parties in entering into the contract. *Id.; see also, United Sav. & Loan Ass'n v. Lake of the Ozarks Water Festival, Inc.*, 805 S.W.2d 350, 354 (Mo.App.1991) (ambiguity is created where individual added words indicating he was only signing in an official capacity and contract provided for individual liability).

■ Similarly, in this case there is an inconsistency between the assumption of personal liability and Mr. Middendorf's signature. While the contract lists Mr. Middendorf as an individual party and has an extra, separate signature line apparently for Mr. Middendorf to sign in his individual capacity, the fact remains that Mr. Middendorf did not sign the contract in his individual capacity. Rather, he signed it in his official capacity as president of Lewis Rigdon. This is inconsistent with the assumption of personal liability and it was not error for the trial court to admit extrinsic evidence to clarify the intent of the parties.

Appellant contends that even though Mr. Middendorf signed the contract in his corporate capacity, an ambiguity cannot be reached merely by the form of the signature, citing to *Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592 (Mo.App. 1977). The issue before the court in *Taco Kid* was whether two principals were personally liable under a guaranty contract. The guaranty contract was on the back of an application for credit. The two principals

signed the guaranty and added "Pres." after their names.

The court held that this designation did not create an ambiguity and that the two individuals were personally liable noting that the "[t]he preface to the forms specified the guaranties were to be completed by 'a principal of the business' and the addition of the title which identified the signatories as principals of the corporation was merely descriptio personae." *Id.* at 595–96. In so holding, the court added that if the principals were not held liable, the effect would have been to hold that the corporation guaranteed itself through the execution of the explicit guaranty contract. The court held that such a result would be "redundant" and "unreasonable." *Id.* at 596.

*Taco Kid* has been distinguished by at least one other Missouri court which noted that it "involved a guaranty provision which clearly evidenced the personal nature of the guaranty by the specific language used." *United Siding Supply, Inc. v. Residential Improvement Servs.*, 854 S.W.2d 464, 468 (Mo.App.1993). It is distinguishable from the case at bar on similar grounds. While *Taco Kid* involved a guaranty contract which clearly evidenced the personal nature of the guaranty, the contract at issue in this case did not even contain a guaranty clause. Rather, Headrick Outdoor contends that personal liability should be imposed on the grounds that Mr. Middendorf was named as a party in the first part of the contract and was provided an extra signature line. In a case such as this in which the assumption of personal liability conflicts with the execution of the contract, and personal liability is not clearly stated within the contract, extrinsic evidence is admissible to clarify the intent of the parties.

The judgment of the trial court is affirmed.

All concur.