**WARREN SUPPLY COMPANY,**
Respondent,

v.

**LYLE'S PLUMBING, L.L.C.,**
Defendant,

and

**Dean Clegg, Appellant.**

**No. WD 60117.**

Missouri Court of Appeals,
Western District.

May 7, 2002.

Thomas N. Lane, Kansas City, for Appellant.

Nathan C. Harbur, Leawood, for Respondent.

PAUL M. SPINDEN, Chief Judge.

Dean Clegg appeals the circuit court's judgment holding him personally liable for the debt of Lyle's Plumbing, L.L.C., to Warren Supply Company. Clegg contends that, because the guaranty that he signed was ambiguous, the circuit court erred in not considering parol evidence to deter-

mine his intent not to be personally liable. We disagree and affirm the circuit court's judgment.

Lyle's Plumbing was a limited liability corporation in which Clegg held 51 percent of the ownership. During March 2000, the other shareholder of Lyle's Plumbing, Lyle Gehringer, met with John Warren, Warren Supply's president and CEO, to arrange for open credit for Lyle's Plumbing. Warren gave Gehringer a single-page document for Lyle's Plumbing to submit. The top of the page contained an application for credit. The bottom half contained a personal guaranty.

Lyle's Plumbing submitted the document. Immediately beneath the credit application was a signature line. No one signed on the signature line. On the bottom, beneath the credit application and its signature line, was a paragraph providing for a personal guaranty:

> In consideration of extending credit at my request by completing this new account application, I hereby personally guarantee to you, Warren Supply Co., of any obligation and I hereby agree to bind myself to pay you on demand any sum which may become due to you by my firm whenever the firm shall fail to pay the same, plus any reasonable collection and attorney fee Warren Supply Co. incurs in collection of the debt. It is understood that this guarantee shall be a continuing and irrevocable guarantee and modification or renewal of the credit agreement hereby guaranteed.

Clegg signed the signature line under the personal guaranty and designated himself as "Member." He also provided his social security number and listed his title as "Manager."

Lyle's Plumbing did not pay its account, and Warren Supply sued. The circuit court found that the personal guaranty signed by Clegg was clear and unambiguous. It entered judgment against Lyle's Plumbing and Clegg, jointly and severally, for $77,326.42 in damages, $4594.37 in prejudgment interest, $16,958.88 in attorney fees, post judgment interest at the legal rate, and costs. Clegg appeals.

Clegg contends that the personal guaranty was ambiguous, and, therefore, the circuit court erred in not considering parol evidence to determine his intent in signing it. In asserting the ambiguity, he notes (1) that the document contained only one signature at the bottom of the page, (2) that the one signature was qualified with the notation of "Member" after the signature, (3) that the personal guaranty paragraph stated explicitly that the signer of the personal guaranty had applied for credit by completing the credit application, and (4) that the personal guaranty paragraph identified the debt only as the debt of "my firm" and did not specifically identify it.

 The courts' primary goal in a breach of contract action is to enforce the parties' intended agreement. *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995). To accomplish this, a fact finder determines what the parties intended by considering the plain, ordinary, and usual meaning of the words that they used in reaching their agreement in light of the context of the contract as a whole. *Preferred Physicians Mutual Management Group, Inc. v. Preferred Physicians Mutual Risk Retention Group, Inc.,* 961 S.W.2d 100, 103 (Mo.App.1998). Only when a contract's wording is ambiguous should a court permit parol evidence to aid in the fact finder's divining of the parties' intent. *Headrick Outdoor, Inc. v. Middendorf,* 907 S.W.2d 297, 300 (Mo.App. 1995). Whether a contract is ambiguous is an issue of law. *Waldorf Investment Com-*

*pany v. Farris,* 918 S.W.2d 915, 919 (Mo. App.1996).

■ Clegg contends that the guaranty agreement was ambiguous because the credit application was not signed. The effect, he argues, is that no one applied for credit on the application; hence, he personally guaranteed no one's credit. Clegg asserts that the "circumstance simply begs the question: [W]hy would [Clegg] sign off on a personal guaranty for a line of credit which was never applied for in the first place?"

■ This assertion of ambiguity in the guaranty contract is based on the content of the credit application. "Any ambiguity in a guaranty contract should arise in the first instance from the guaranty agreement itself and neither a court nor the parties will be permitted to create an ambiguity where none exists." *Standard Meat Company v. Taco Kid of Springfield, Inc.,* 554 S.W.2d 592, 595 (Mo.App.1977).

Although the credit application was not signed, Clegg does not deny that Lyle's Plumbing established and used an open line of credit from Warren Supply. Although Clegg complains that the language of the guaranty itself does not identify who the principal debtor on the obligation was beyond its identification as "my firm," Clegg's signature makes it clear that his firm—that is, Lyle's Plumbing—was the debtor, and indeed Lyle's Plumbing was the firm to which Warren Supply extended credit. We, therefore, reject Clegg's notion that the guaranty agreement was ambiguous based on the credit application's content.

■ Clegg also contends that the guaranty agreement was ambiguous because it appeared on the same page as the credit application with no "label" setting the guaranty agreement apart from the credit application. This, he complains, camou-

flaged the presence of two separate agreements on the page. His signature appears at the bottom of the page, where, Clegg suggests, one would expect to see a signature if only a single document were involved.

■ "The law is well settled that one who signs a contract is presumed to have known its contents and accepted its terms." *Wired Music, Inc. of the Great Midwest v. Great River Steamboat Company,* 554 S.W.2d 466, 469 (Mo.App.1977). In the absence of particular circumstances rendering the signature's form as inconsistent with the form of the stated liability, a party's not reading a contract does not afford him a defense against liability under the contract. *Id.*

■ Clegg also contends that the guaranty contract was ambiguous because his signature's form was inconsistent with his assuming personal liability. He qualified his signature with the word "Member." Signing in an official capacity, he argues, is inconsistent with agreeing to assume personal obligation. We disagree.

■ "The general rule regarding liability incurred by an individual who signs an instrument on behalf of another party is: [W]here the principal is disclosed and the capacity in which the individual signs is evident, ... the liability is the principal's and not the individual signing for the principal." *Wired Music,* 554 S.W.2d at 468; *see also Headrick,* 907 S.W.2d at 300. " 'The presumption, in such cases, is, that it was the agent's intention to bind his principal and not to incur personal liability, and an agent will not be bound personally, except upon clear and explicit evidence of an intention to be bound.' " *Wired Music,* 554 S.W.2d at 468 (quoting *Bridges v. Rice,* 99 S.W.2d 531, 534 (Mo.App.1936)). Clegg is correct that, when a signature's form is inconsistent with the assumption of

personal liability stated in the contract, an ambiguity is created as to whether the individual is personally liable under the contract's terms. *Id.* at 469; *Headrick,* 907 S.W.2d at 300. Any ambiguity, however, must arise from the guaranty agreement itself. *Standard Meat Company,* 554 S.W.2d at 595.

■ Had Clegg signed the guaranty, disclosed the principal and set forth the capacity in which he signed the document, his signature would have been ambiguous. *Wired Music,* 554 S.W.2d at 468. Clegg's signature, however, did not disclose in the guaranty agreement itself any principal. He made no reference to Lyle's Plumbing in the signature block. Although Clegg entered "Member" after his signature, addition of a descriptive title is not sufficient to relieve the signing party of personal liability. *Receivables Finance Corporation v. Hamilton,* 408 S.W.2d 44, 46 (Mo. 1966).[1] "[T]he addition of a title which identifie[s] the signator[y] as [a] principal[ ] of the corporation [is] merely *descriptio personae." Standard Meat Company,* 554 S.W.2d at 596.

Clegg asserts that in *Headrick* this court determined that parol evidence was admissible to establish the true intent of the parties concerning a leasing contract although the signatory did not disclose his principal. In *Headrick,* the leasing contract at issue had four signature lines: two were labeled as being for corporate signatures and two were labeled as being for personal signatures. 907 S.W.2d at 299. The president of the company signed on the corporate signature line as the president of the company, and he signed on the

personal signature lines as "Garland Middendorf, President." *Id.* The court determined that Middendorf did not sign the contract in his individual capacity; therefore, the contract was ambiguous as to whether he could be held personally liable under the contract. *Id.* at 300.

The *Headrick* court, however, distinguished cases involving guaranty contracts and noted the holding of *Standard Meat Company:* " '[T]he addition of a title which identified the signatories as principals of the corporation was merely *descriptio personae.'* " *Id.* at 301 (quoting *Standard Meat Company,* 554 S.W.2d at 596). The *Headrick* court held:

[*Standard Meat Company*] "involved a guaranty provision which clearly evidenced the personal nature of the guaranty by the specific language used." . . . It is distinguishable from the case at bar on similar grounds. While [*Standard Meat Company*] involved a guaranty contract which clearly evidenced the personal nature of the guaranty, the contract at issue in this case did not even contain a guaranty clause. Rather, Headrick Outdoor contends that personal liability should be imposed on the grounds that Mr. Middendorf was named as a party in the first part of the contract and was provided an extra signature line. In a case such as this in which the assumption of personal liability conflicts with the execution of the contract, and personal liability is not clearly stated within the contract, extrinsic evidence is admissible to clarify the intent of the parties.

*Wired Music,* 554 S.W.2d at 468. The Wired Music court held that *"where the principal is disclosed* and the capacity in which the individual signs is evident, e.g. president, secretary, agent, the liability is the principal's and not the individual signing for the principal."* Id.* (emphasis added).

---

1. Clegg asserts that Receivables Finance Corp. is not applicable to this case because it involved negotiable instruments and the interpretation of a statute under the Uniform Negotiable Instruments Act. Missouri courts, however, have applied this rule to other types of contracts, including a contract of guaranty.

*Id.* Unlike *Headrick,* personal liability was clearly stated within the guaranty contract signed by Clegg; therefore, Clegg's case is distinguishable from the specific holding in *Headrick.*

■ We conclude that, because Clegg did not disclose his principal when he signed the guaranty, no ambiguity existed in regard to the personal guaranty. The circuit court correctly found that the personal guaranty was "clear and unambiguous"; therefore, the circuit court properly decided against considering Clegg's parol evidence. We affirm the circuit court's judgment.

JAMES M. SMART, JR., Judge, and VICTOR C. HOWARD, Judge, concur.