CAPITOL GROUP, INC., Appellant,

v.

Donald G. COLLIER, Jr., Respondent.

No. ED 97135.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 9, 2012.

Philip J. Christofferson, St. Louis, MO, for appellant.

Timothy R. Huff, St. Charles, MO, for respondent.

PATRICIA L. COHEN, Presiding Judge.

### Introduction

Capitol Group, Inc. (Plaintiff) appeals the judgment of the Circuit Court of St. Charles County sustaining Donald Collier's (Defendant) motion to dismiss Plaintiff's action for breach of a personal guaranty. Plaintiff claims the trial court erred in dismissing Plaintiff's action against Defendant because: (1) the language of the parties' agreement is sufficient, as a matter of law, to constitute a personal guaranty; and (2) when construed according to the rules of contract interpretation, the agreement constitutes a personal guaranty. In the alternative, Plaintiff contends that the language of the agreement is ambiguous and the case should be remanded for the admission of parol evidence. We affirm.

### Factual and Procedural Background

Plaintiff, a distributor of cabinets and plumbing materials, filed a petition against Triad Development Co. (Triad) for breach of contract and against Defendant, Triad's president, for breach of a personal guaranty. Plaintiff alleged that on October 6, 2005, Triad submitted to Plaintiff a credit application ("Credit Application"), seeking to purchase goods from Plaintiff on credit. Plaintiff accepted the Credit Application, and, at Triad's request, supplied cabinetry and plumbing materials to Triad on a credit basis. Plaintiff alleged that Triad failed or refused to pay its account, causing Plaintiff to suffer damages of $23,796.92.

Plaintiff attached to its petition a copy of the Credit Application, a two-page form document drafted by Plaintiff and executed by Triad. At the top of the first page, the Credit Application states: "FOR THE PURPOSE OF ESTABLISHING CREDIT ACCOMMODATIONS WITH YOU, THE FOLLOWING INFORMATION IS PROVIDED." Below this heading, there is a blank space for the "Business Name," where the name Triad Development is handwritten, along with Triad's address. The next section, entitled "Invoice Terms and Conditions," states, *inter alia*, that "[a]ttorney and collection fees and costs, if necessary, and service charges of 2% per month will be applied to all past due amounts." Directly underneath, in blank spaces labeled "Principals," Triad supplied the names: Don Collier, President, and Cindy Collier, Secretary. At the bottom of the first page, there is a blank space for "Name of Bank," where Triad provided the name of its bank and its commercial account number.

On the second page of the Credit Application, below the language, "AUTHORIZE REFERENCES INDICATED TO RELEASE INFORMATION RELATIVE TO OUR CREDIT ARRANGEMENTS TO [PLAINTIFF]," Triad provided the names and contact information of three references. The references are followed by a section entitled "Terms of Sale," which provides, in part:

> In consideration of credit being extended to the above named business by Capitol Group, Inc.[,] we the undersigned,

agree to be jointly, severally, and individually responsible for the payment of any and all goods and/or services furnished by Capitol Group to or for our business or to us individually within the terms and conditions as stated on the Capitol Group Invoice, a form of which appears above. All accounts are due and payable to the remittance address shown on the invoice. In the event the account becomes past due, a charge of 2% per month (24% per annum) shall be due and payable on all past due amounts. The undersigned agrees to pay all costs of collection, including attorney fees and court costs in addition to all other sums due.

At the bottom of the second-page, there is a signature block, which Defendant signed and dated.

On March 17, 2010, Plaintiff filed a motion for default judgment against Triad as to its action for breach of contract. On March 29, 2010, the trial court entered a default judgment in favor of Plaintiff and against Triad in the amount of $32,751.04. The trial court stated that the judgment was final as to Triad, but "d[id] not resolve [Plaintiff's] claims against defendant Donald G. Collier, Jr."

On April 21, 2011, Defendant filed a Rule 55.27(a)(6) motion to dismiss Plaintiff's claim for breach of personal guaranty for failure to state a claim upon which relief can be granted. In his motion to dismiss, Defendant asserted that Plaintiff's claim was barred by the statute of frauds because: (1) if Defendant signed the Credit Application in his capacity as president of Triad, the personal guaranty was not signed by the party to be charged as required by Section 432.010; or (2) in the alternative, if Defendant signed the Credit Application in his individual capacity, there is no enforceable contract for the sale of goods upon which Defendant's alleged personal guaranty is based.

The trial court heard arguments on May 20, 2011, after which the parties filed additional briefings. On July 6, 2011, the trial court granted Defendant's motion to dismiss, stating:

> [Defendant's] motion to dismiss for failure to state a claim for which relief can be granted is now ordered sustained for the reason the contract which forms the basis of the claim against Defendant individually as a personal guarantor of a debt incurred by Triad Development Company does not show there was a personal guaranty executed by [Defendant].

Plaintiff filed a motion to reconsider, arguing that the trial court erred in sustaining Defendant's motion to dismiss because "the plain language of the Terms of Sale in the document clearly show that [Defendant] is signing the agreement in his personal capacity, and is thereby guaranteeing repayment of debts incurred by his business (Triad) under the agreement . . . ." (emphasis omitted). After hearing arguments on Plaintiff's motion to reconsider, the trial court denied the motion "on the basis that the language in the [Credit Application] is insufficient to constitute a personal guaranty as a matter of law." Plaintiff appeals.

### *Standard of Review*

Rule 55.27(a)(6) allows a defendant to file a motion to dismiss a plaintiff's petition for failure to state a claim upon which relief can be granted. Rule 55.27(a)(6); *see also Town & Country Appraisals, LLC v. Hart*, 244 S.W.3d 187, 189 (Mo.App. E.D.2007). "This rule encourages early resolutions in order to avoid the expense and delay of baseless claims and to promote judicial efficiency." *Town & Country*, 244 S.W.3d at 189. "Conse-

quently, a trial court may dismiss a claim when a party fails to state a cause of action or fails to state facts entitling him to relief." *Id.* We review the trial court's grant of a motion to dismiss *de novo. Lynch v. Lynch,* 260 S.W.3d 834, 836 (Mo. banc 2008).

### Discussion

In its first and second points on appeal, Plaintiff claims that the trial court erred in dismissing its action against Defendant for breach of personal guaranty because: (1) the language in the Credit Application was sufficient as a matter of law to constitute a personal guaranty; or (2) "basic contract interpretation principles dictate that the [Credit Application] contains a personal guaranty." We consider these two points together.[1]

◼ A guaranty is a contract in which a guarantor agrees to become secondarily liable for the obligation of a debtor in the event the debtor does not perform the primary obligation. *Jamieson–Chippewa Inv. Co., Inc. v. McClintock,* 996 S.W.2d 84, 87 (Mo.App. E.D.1999). The rules governing construction of contracts generally apply to the construction of a guaranty. *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 434 (Mo. banc 2003). "However, the liability of a guarantor is to be strictly construed according to the terms of the guaranty agreement and may not be extended by implication beyond the strict letter of the obligation." *Id.*

◼ The general rule regarding liability incurred by an individual who signs an instrument on behalf of a principal is that the principal is liable, and not the individu-

al, where the principal is disclosed and the capacity in which the individual signs the contract is evident. *Headrick Outdoor, Inc. v. Middendorf,* 907 S.W.2d 297, 300 (Mo.App. W.D.1995) (*citing Wired Music, Inc. v. Great River Steamboat Co.,* 554 S.W.2d 466, 468 (Mo.App.1977)). We presume "that it was the agent's intention to bind his principal and not to incur personal liability, and an agent will not be bound personally, except upon clear and explicit evidence of an intention to be bound." *Wired Music,* 554 S.W.2d at 468.

◼ When considering whether a signatory to a contract intended to sign the agreement in his corporate or individual capacity, the determinative question is whether, "in view of the form of the signature to the agreement, the language of the so called guaranty clause is sufficient to manifest a clear and explicit intent by [the signatory] to assume a personal guaranty contract." *Wired Music,* 554 S.W.2d at 468; *see also Cardinal Health 110, Inc. v. Cyrus Pharmaceutical, LLC,* 560 F.3d 894, 899 (8th Cir.2009) (applying Missouri law). Accordingly, our courts have adopted the policy that "in order to hold a corporate officer individually liable in signing a contract of guaranty ... the officer should sign the contract twice[,] once in his corporate capacity and once in his individual capacity." *Wired Music,* 554 S.W.2d at 470–71. By signing the contract twice, the officer executing the contract for his corporation clearly manifests his intent to assume personal liability. *Id.*

◼ In the instant case, Plaintiff asserts that Defendant is personally liable for Triad's failure to pay its account because the Credit Application provides: "[W]e the undersigned, agree to be jointly, severally,

---

1. In its initial brief, Plaintiff claimed that this court should apply Illinois law because the Credit Application contains a choice of law provision. However, in its reply brief and at oral arguments, Plaintiff effectively abandoned its argument that Illinois law applies. We therefore apply Missouri law.

and individually responsible for the payment of any and all goods and/or services furnished by [Plaintiff] to or for our business...." Plaintiff contends that "[t]here is simply no way to read this language other than as a personal guaranty," particularly in light of the fact that Defendant signed the Credit Application without reference to a corporate capacity. Defendant counters that, when considered in its entirety, it is clear that he executed the Credit Application, including the purported personal guaranty, in his corporate capacity, as president of Triad, and not in his individual capacity. We agree.

■ As stated above, we apply principles of contract construction to the interpretation of a guaranty. *Dunn,* 112 S.W.3d at 434. "The primary rule in interpretation of contracts is to ascertain the parties' intent and give effect to that intent." *Kansas City Univ. of Med. & Biosciences v. Pletz,* 351 S.W.3d 254, 261 (Mo. App. W.D.2011). We consider the document as a whole and give the words their plain and ordinary meaning. *Id.*

A review of the entire Credit Application reveals that it is between two parties— Plaintiff, the seller/creditor, and Triad, the "undersigned" business seeking to purchase goods from Plaintiff on credit. The heading of the document states: "FOR THE PURPOSE OF ESTABLISHING CREDIT ACCOMMODATIONS WITH YOU, THE FOLLOWING INFORMATION IS PROVIDED." The information that follows relates to Triad, the corporate entity, not Defendant, the corporate officer. Specifically, the Credit Application has blank spaces for "Business Name," as well as the business's telephone number, address, type, date of inception, and federal identification number. Below the section entitled "Invoice Terms and Conditions," the Credit Application has four lines with blank spaces for the names of

Triad's "Principals." Triad provided the following names and job titles: Don Collier, President, and Cindy Collier, Secretary.

On the second page of the Credit Application, Plaintiff requested information relating to Triad's credit arrangements and relationships with other suppliers. The Credit Application states: "THE UNDERSIGNED HEREBY AUTHORIZES REFERENCES INDICATED TO RELEASE INFORMATION RELATIVE TO OUR CREDIT ARRANGEMENTS TO [PLAINTIFF]." In the blank spaces, Triad provided the names, addresses, and telephone numbers of three of its "Major Suppliers."

Below Triad's references is the section entitled "Terms of Sale," in which the purported personal guaranty language appears. These Terms of Sale, however, are addressed to Triad, the credit applicant. The Terms of Sale do not evidence a clear intent to bind in a personal rather than a corporate capacity the individual who signed the Credit Application. *See, e.g., United Siding Supply, Inc. v. Residential Imp. Servs., Inc.,* 854 S.W.2d 464, 468 (Mo. App. W.D.1993); *cf. Standard Meat Co. v. Taco Kid of Springfield, Inc.,* 554 S.W.2d 592, 596 (holding that the guaranty language clearly evidenced the personal nature of the guaranty). Significantly, the word "guaranty" appears neither in the "Terms of Sale" section nor elsewhere in the Credit Application.

Furthermore, the structure of the Credit Application evidences Plaintiff's purpose to bind Defendant in his corporate capacity and not in his individual capacity. The Credit Application contains only one signature block, which appears at the end of the document. Plaintiff did not provide separate signature blocks for the credit agreement and guaranty agreement. *cf. Warren Supply Co. v. Lyle's Plumbing, LLC,*

74 S.W.3d 816, 821 (Mo.App. W.D.2002) (holding that corporate officer was personally liable under personal guaranty contained in same document as a credit application where the personal guaranty and credit application had separate signature blocks). Nor did Defendant sign the Credit Application more than once so as to demonstrate an intent to be bound both as corporate officer and as an individual. To unequivocally manifest an intent to be bound personally, a corporate officer must sign the contract twice, once in his corporate capacity and once in his individual capacity. *Wired Music*, 554 S.W.2d at 471; *see also Cardinal Health*, 560 F.3d at 900 (holding that the guarantee evidenced the signatories' intent to be bound personally where the contract contained separate signature blocks for the credit agreement and guaranty agreement).

Plaintiff maintains that, in construing the Credit Application to bind Triad and not Defendant personally, the trial court's holding "produces absurd results." More specifically, Plaintiff claims that if Defendant is not personally guaranteeing payment of Triad's account, his signature on the Credit Application is meaningless. Plaintiff's argument ignores the significance of Defendant's signature in his corporate capacity as president of Triad. In this case, the Credit Application is the only documentation of Triad's liability to Plaintiff. The plain and ordinary meaning of the Credit Application's language communicates Plaintiff's agreement to extend credit to Triad for future purchases in exchange for Triad's agreement to comply with the terms and conditions of Plaintiff's

invoices and pay interest on any past due amounts. The execution of the Credit Application by Defendant in a corporate capacity only was therefore not redundant or meaningless. *See, e.g., United Siding*, 854 S.W.2d at 469; *cf. Cardinal Health*, 560 F.3d at 901 (holding that, where the credit agreement granted the creditor a security interest in the corporate debtor, interpreting the guaranty to bind the corporation and not the corporate officer would grant the plaintiff a right it already possessed).

In its reply brief and at oral argument, Plaintiff asserted that this court must reach the same conclusion as the court in *Warren Supply Co. v. Lyle's Plumbing, LLC*, 74 S.W.3d 816 (Mo.App. W.D.2002). There, the court affirmed the trial court's holding that a personal guaranty contained in a credit application was unambiguous and the guarantor was personally liable for the principal's debt. *Warren*, 74 S.W.3d at 821. That case is factually distinguishable in at least two important respects. First, the document in Warren contained separate signature lines for the credit application and personal guaranty. *Id.* at 818. Although the individual defendant only signed the document once, the inclusion of two separate signature lines, one for the credit application and one for the guaranty, evidenced the parties' clear intent to include a personal guaranty with the credit application.

Second, the language of the personal guaranty in *Warren* clearly distinguished the corporation and guarantor as separate entities and expressed the guarantor's intent to incur personally liability.[2] *Id.* at 818. Specifically, the guaranty stated: "I

---

2. The personal guaranty in *Warren* provided:
   In consideration of extending credit of my request by completing this new account application, I hereby personally guarantee to you, Warren Supply Co, of any obligation and I hereby agree to bind myself to pay you on demand any sum which may be-

come due to you by my firm whenever the firm shall fail to pay the same, plus any reasonable collection and attorney fee Warren Supply Co. incurs in collection of the debt.
*Warren*, 74 S.W.3d at 821.

*personally guarantee* to you ... and *I hereby agree to bind myself to* pay you on demand any sum which may become due to you *by my firm* whenever the firm shall fail to pay the same...." *Id.* (emphasis added). This language clearly references two separate entities with obligations to Warren Supply Co.—the guarantor, or individual corporate officer, and the guarantor's "firm." Furthermore, the words "I personally guarantee" and "I hereby agree to bind myself" plainly express the signatory's intent to be personally liable under the contract. In contrast, the Credit Application in the instant case states only: "we the undersigned, agree to be jointly, severally, and individually responsible for the payment of any and all goods and/or services...." This language neither distinguishes the corporate officer from the corporation nor expressly communicates the signatory's intent to be bound personally.

Based on our review of the record, we conclude that the trial court did not err in dismissing Plaintiff's action for breach of guaranty against Defendant. Plaintiff failed to plead a guaranty signed by Defendant that evidenced Defendant's intent to be personally liable on Triad's account. Points denied.

In its third point relied on, Plaintiff contends that the Credit Application is, at least, ambiguous and the case should be remanded to the trial court "to allow the parties to introduce parol evidence as to what their intent was when the document was signed." "Absent ambiguity, the intent of the maker of a legal instrument is to be ascertained from the four corners of the instrument without resort to extrinsic evidence." *Blackburn v. Habitat Dev. Co.,* 57 S.W.3d 378, 386 (Mo. App. S.D.2001) (quotation omitted). "A contract is ambiguous only if its terms are reasonably open to more than one meaning, or the meaning of the language used is

uncertain." *Care Center of Kansas City v. Horton,* 173 S.W.3d 353, 355 (Mo.App. W.D.2005). "A provision is not ambiguous merely because the parties disagree over its meaning." *Id.*

Based on the plain and ordinary meaning of the words used in the Credit Application and the absence of two signature lines, we conclude that the credit Application is not ambiguous. The Credit Application clearly states that it is an agreement for Plaintiff to extend credit for future purchases to Triad. The Credit Application is also clear on its face that Triad guaranteed payment of its accounts to Plaintiff. Point denied.

### Conclusion

The judgment is affirmed.

GLENN A. NORTON, J., and
ROBERT M. CLAYTON III, J., concur.