

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| CENTRAL BANK OF KANSAS CITY, ) | |
| Respondent, ) | |
| ) | |
| v. ) | **WD76102** |
| ) | |
| DONALD PERRY, et ux, ) | **FILED: April 15, 2014** |
| Appellant. ) | |

**Appeal from the Circuit Court of Platte County**
**The Honorable Owens L. Hull, Jr., Judge**

**Before Division One: Alok Ahuja, P.J., and Thomas H. Newton**
**and Anthony Rex Gabbert, JJ.**

In November 2007, Appellants Donald D. Perry and N. Alice Perry (collectively "the Perrys") executed a deed of trust to secure a loan extended by Respondent Central Bank of Kansas City to Perry & Sons, Inc. (doing business as "North Oak BP"). The Perrys appeal from a judgment entered by the Circuit Court of Platte County, which declared that the Perrys' deed of trust was valid and enforceable. We affirm.

## Factual Background

On November 5, 2007, Perry & Sons obtained a loan from Central Bank for $1,100,889.73, evidenced by a promissory note. The loan was denominated Loan Number 5871002. The Perrys executed a Real Estate Deed of Trust to secure the repayment of the 2007 Note. The Perrys' son, Donald D. Perry II, and their daughter-in-law, Kari C. Perry, also executed a personal guaranty and deed of trust; a deed of trust and guaranty were also executed

by GOG, LLC, a Missouri limited liability company of which Donald D. Perry was the organizer and registered agent.

The 2007 note went through four separate modifications, on October 5, 2009, on October 5 and November 5, 2010, and on February 5, 2011. Although each modification was different, speaking generally the modifications authorized certain interest-only loan payments, extended the loan's maturity date, modified the formula for calculating the loan's variable interest rate, added additional security, and advanced some limited additional funds. The Perrys did not execute, or expressly consent to or authorize, any of the loan modifications.

Central Bank declared Perry & Sons to be in default on the loan. On January 20, 2012, Central Bank filed a petition for declaratory judgment against the Perrys in the circuit court. Central Bank's petition sought a declaratory judgment that the Perrys' November 2007 Deed of Trust was a valid and enforceable security instrument. The Perrys argued, to the contrary, that the Deed of Trust was a guaranty, and was rendered unenforceable by the modification of the loan's material terms without their consent. The parties filed cross motions for summary judgment. The trial court granted Central Bank's motion. The trial court's judgment states that, "from the pleadings on file the Court finds that the Real Estate Deed of Trust filed on or about November 5, 2007, and signed by [the Perrys] herein is exactly what it purports to be in that it is a Deed of Trust and not a guaranty." The Perrys appeal.

## Standard of Review

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially de novo. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be

2

employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) (citations omitted).

## Analysis

### I.

The Perrys first Point argues that the trial court erred in granting summary judgment, because the Deed of Trust which they executed is a guaranty, not simply a security agreement. In their second Point the Perrys contend that, if the Deed of Trust is characterized as a guaranty, the material modifications of the underlying loan relieved them of their obligations as guarantors.

We reject the Perrys' attempt to characterize the Deed of Trust as a guaranty. "A guaranty is a collateral agreement for performance of an undertaking of another, and it imports two different obligations, that of the principal debtor and of the guarantor." *United Sav. & Loan Ass'n v. Lake of Ozarks Water Festival, Inc.*, 805 S.W.2d 350, 353 (Mo. App. S.D. 1991) (citation omitted). "A guaranty is a contract in which a guarantor agrees to become secondarily liable for the obligation of a debtor in the event the debtor does not perform the primary obligation." *Capitol Group, Inc. v. Collier*, 365 S.W.3d 644, 648 (Mo. App. E.D. 2012) (citing *Jamieson-Chippewa, Inv. Co. v. McClintock*, 996 S.W.2d 84, 87 (Mo. App. E.D. 1999)). "The heart of a contract for guaranty is that the signor has agreed to be liable principally for another's debt." *ITT*, 854 S.W.3d at 386; *accord Patterson v. Katt*, 791 S.W.2d 466, 468 (Mo. App. E.D. 1990) ("both guaranty and suretyship involve the acceptance by the promisor of liability for the debt of another").

3

On the other hand, by executing a deed of trust a grantor merely pledges specific property as security for a debt; the grantor does not assume any personal liability. "A deed of trust is a form of mortgage consisting of an instrument that uses an interest in real property as a security for performance of an obligation." *Bob DeGeorge Assocs., Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 597 (Mo. banc 2012) (quoting RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 1.1 (1997)). "A deed of trust in the nature of a mortgage given on land to secure the payment of a debt is held to be a lien and nothing more. . . . It is merely the right to have the debt, if not otherwise paid, satisfied out of the land." *HSBC Bank USA, N.A. v. Weber*, 400 S.W.3d 32, 36 (Mo. App. W.D. 2013) (quoting *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.*, 513 S.W.2d 365, 368 (Mo. banc 1974) (other citations omitted)); *see also US Bank N.A. v. Cox*, 341 S.W.3d 846, 854 (Mo. App. W.D. 2011). Unlike a guarantor, the grantor of a deed of trust does not assume personal liability for the underlying debt. *US Bank*, 341 S.W.3d at 853 (citing *R.L. Sweet*, 513 S.W.2d at 368; *State Ins. Co. v. Irwin*, 67 Mo. App. 90 (1896)).

Both guaranties and deeds of trust are subject to generally applicable rules of contract construction. *See Capitol Group*, 365 S.W.3d at 648 ("[t]he rules governing construction of contracts generally apply to the construction of a guaranty."); *Melson v. Traxler*, 356 S.W.3d 264, 270 (Mo. App. W.D. 2011) ("[t]he resolution of [the party's obligations under a deed of trust] hinges on contract interpretation."). The first step in interpreting a contract is to "ascertain the intent of the parties by looking at the words of the [contract] and giving those words their plain, ordinary and usual meaning. The intent of the parties is determined based on the [contract] alone unless the contract is ambiguous." *Melson*, 356 S.W.3d at 270 (quoting *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 131 (Mo. banc 2007)).

4

In this case, the terms of the November 2007 Deed of Trust make unmistakably clear that the Perrys did not agree to serve as guarantors of Central Bank's loan to Perry & Sons. The Deed of Trust refers to itself as a "Security Instrument" subject to § 443.055, RSMo. It begins by specifying that, "to secure the Secured Debt" (defined as Perry & Sons' November 2007 loan), the Perrys "irrevocably grant[ ]" their property to the trustee, "in trust for the Benefit of Lender, with power of sale." The Deed of Trust gives the trustee the power to sell the pledged property on a default on the Secured Debt, and contains numerous property-specific terms (referring, for example, to the quality of the grantors' title to the property, the condition and maintenance of the property, other security interests against the property, and the possible leasing or condemnation of the property). While the Deed of Trust contains a provision stating that "[g]rantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument," another provision makes clear that the Perrys assume no personal liability for payment of the Perry & Sons loan:

> If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and **Grantor does not agree to be personally liable on the Secured Debt**.

(Emphasis added.)[1]

Thus, the Deed of Trust clearly indicates that the purpose of the instrument was to pledge the Perrys' real property as security for the underlying debt; the Deed of Trust gave Central Bank no recourse against the Perrys, personally, for a default on that debt. Because the Deed of Trust did not impose any personal liability on the Perrys for the Perry & Sons loan, it did not impose guaranty obligations upon them. The Perrys' first Point is denied. Because their second Point is

---

[1] This same provision refers to the possibility that the Deed of Trust may "secure[ ] a guaranty between Lender and Grantor." This reference to a *separate* guaranty certainly suggests that the Deed of Trust does not itself constitute or contain such a guaranty.

based on the premise that the Deed of Trust is properly characterized as a guaranty, we deny

Point II as well.

## II.

In their third Point, the Perrys argue that even if the Deed of Trust is not a guaranty, the

November 2010 and February 2011 loan modifications constituted new loan agreements which

extinguished the prior note, and released any security which had been pledged as collateral for

the prior note.  We disagree.

> When interpreting written contracts, courts must first ascertain the parties' intent.
> If the terms of the contract are clear, the parties' intent must be determined from
> the contract language without applying the rules of construction.  When
> interpreting a contractual provision, it should not be done by isolating one
> particular sentence or provision.  Courts must construe and consider the entire
> instrument from its four corners.  The law favors reasonable interpretations, and
> results which vitiate the purpose of the terms of the agreement to an absurdity
> should be avoided.

*O'Connor v. Miroslaw*, 388 S.W.3d 541, 552 (Mo. App. W.D. 2012) (citation omitted).

The Perrys' Deed of Trust specifies that it is intended to secure the 2007 promissory note,

as well as its "extensions, renewals, modifications, or substitutions."  The Deed of Trust also

specifies that

> Grantor agrees that Lender and any party to this Security Instrument may
> extend, modify or make any changes in the terms of this Security Instrument or
> any evidence of debt without Grantor's consent.  Such change will not release
> Grantor from the terms of this Security Instrument.  The duties and benefits of
> this Security Instrument shall bind and benefit the successors and assigns of
> Grantor and Lender.

Based upon the terms in both the November 2010 and February 2011 loan documents, it

is clear that those documents extended, renewed, modified, or functioned as substitutes for the

2007 note.  Although the principal documents executed by the Perrys' son and daughter-in-law

in November 2010 and February 2011 were labeled "Commercial Loan Agreements" (rather than

6

"loan modifications"), the documents are identified by Loan Number 5871002, the same loan number as the original 2007 Note and each of the previous modifications.

Moreover, at the same time that they executed the "Commercial Loan Agreements" in November 2010 and February 2011, the Perrys' son and daughter-in-law also executed "Debt Modification Agreements." The Debt Modification Agreements identified the "Prior Obligation" as Loan Number 5871002. The Modification Agreements recited that, because "[c]onditions have changed since the execution of the Prior Obligation instruments," the lender and borrower "agree to modify the terms of the Prior Obligation, as provided for in this Modification." The Modification Agreements also provided that, "[e]xcept as specifically amended by this Modification, all of the terms of the Prior Obligation shall remain in full force and effect." Furthermore, in both November 2010 and February 2011, the Perrys' son and daughter-in-law signed a "Notice and Consent to Modification by Guarantor," in which they indicated their personal consent (as guarantors of the Perry & Sons loan) to the loan modifications effected at the time. The Notice and Consent documents "unconditionally consent to the Modification," and attest that, "[e]xcept to the extent that the Modification expressly modifies the terms and conditions of the Prior Obligation, I acknowledge that the terms and conditions of the Prior Obligation and the Guaranty continue in full force and effect."[2]

"[W]hen several instruments relating to the same subject are executed at the same time, the documents will be construed together, even in the absence of explicit incorporation, unless the realities of the situation indicate that the parties did not so intend. Such is true even when the

_____

[2]     It is also significant that, other than an additional advance of $30,000 in the November 2010 transaction, the principal amount of the indebtedness was not altered by the November 2010 or February 2011 transactions. The additional $30,000 extension of credit is less than 3% of the outstanding loan balance; and the loan principal never exceeded the $1,100,889.73 limit stated in the Perrys' Deed of Trust.

7

instruments are not part of a single contract." *Midland Prop. Partners, LLC v. Watkins*, 416

S.W.3d 805, 812 (Mo. App. W.D. 2013) (citations and internal quotation marks omitted).

Considering the documents executed at the time of the November 2010 and February 2011 loan

modifications as a whole, it is clear that those transactions were intended as "extensions,

renewals, [or] modifications" of, or "substitutions" for, the November 2007 promissory note

which the Perrys' Deed of Trust secured. The Perrys' Deed of Trust survived the November

2010 and February 2011 tranactions.[3] Point III is denied.

## Conclusion

The circuit court's judgment is affirmed.

_____
Alok Ahuja, Judge

All concur.

---

[3]     The Perrys cite *Golden Sun Feeds, Inc. v. Dugan*, 682 S.W.2d 173 (Mo. App. W.D. 1984), to argue that a factual issue exists as to whether the November 2010 and February 2011 transactions were intended to extinguish the earlier note, and thereby discharge the Perrys' Deed of Trust. *Golden Sun Feeds* involved a *guaranty* rather than a deed of trust, however, and therefore applied different legal standards concerning the discharge of a guarantor due to subsequent modifications of the underlying debt. *Id.* at 176. In addition, there is no indication in *Golden Sun Feeds* that the guaranty contract provided that the guaranty obligation would apply to extensions, renewals or modifications of, or substitutes for, the underlying notes. Finally, in *Golden Sun Feeds*, one of the signatories to a later note testified that "he believed the new note was intended to replace the original notes," *id.*; here, by contrast, the Perrys' son and daughter-in-law attested in writing that the November 2010 and February 2011 transactions were *modifications* of the original note, rather than replacements for it. They also agreed that the terms of the original note continued in effect except as expressly modified.

8