

# In the Missouri Court of Appeals
# Eastern District

WRIT DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, ex rel. | ) | No. ED103867 |
| DAVID K. WILLS and JAMES E. SALMON, | ) | |
| | ) | Writ of Prohibition |
| Relators, | ) | |
| | ) | |
| vs. | ) | Case No. 14SL-CC04233 |
| | ) | |
| HONORABLE TOM DEPRIEST, JR., | ) | |
| Circuit Judge, Circuit Court of St. Louis | ) | |
| County, Missouri, | ) | |
| | ) | |
| Respondent. | ) | Filed: February 2, 2016 |

## OPINION

Relators David Wills and James Salmon seek a writ of prohibition directing the Honorable Tom DePriest to refrain from proceeding against them in Case No. 14SL-CC04233 for lack of personal jurisdiction. Relators' petition is granted.

Prohibition is a discretionary writ. State ex rel. Specialized Transp., Inc. v. Dowd, 265 S.W.3d 858, 861 (Mo. App. E.D. 2008). Prohibition will lie only to prevent an abuse of judicial discretion, to avert irreparable harm to a party, or to prevent the exercise of extra-jurisdictional power. Id. Prohibition is appropriate where the lower court lacks personal jurisdiction. Id.

Relators are the owners of Global Blue Technologies-Cameron LLC and its affiliate companies (collectively GBT), all based in Texas. Mr. Wills is a Texas resident,

and Mr. Salmon is a Florida resident. GBT is in the business of raising shrimp in large man-made ponds covered by domes. Arizon Structures Worldwide (Arizon), an Illinois company with its principal place of business in St. Louis County, is in the business of manufacturing such domes. In 2013, GBT and Arizon entered into a series of contracts for the purchase of six domes. After Arizon delivered the first two domes, GBT defaulted on payment, so Arizon filed a lawsuit for breach of contract and related claims in St. Louis County naming as defendants not only GBT but also Relators personally. In its petition, Arizon claimed that the trial court had personal jurisdiction over the defendants, including Relators, in that they transacted business in Missouri and, pursuant to one of the contracts, selected St. Louis County as the forum for resolving any disputes arising out of the transaction.

Relators filed a motion to dismiss, seeking to be discharged from the suit as individual defendants for lack of personal jurisdiction. The trial court denied the motion based on the fact that one of the documents comprising the transaction contained Relators' initials on each page without a qualifier as to their representative capacity.

The document in question, titled Quotation, is a scope of work and estimate generated by Arizon from a fill-in template. Page one addresses the document to Relators and GBT as "Buyer." Page two, titled Scope of Work, names only GBT as Buyer. Page three, titled Buyer's Acceptance, contains a signature block with two signature lines, beneath which the template indicates "Duly Authorized Representatives." Relators' signatures appear on the lines above that notation. Page four is an addendum for design specifications, with a checkbox indicating "none." Page five contains boilerplate Terms and Conditions of Sale, including a forum selection clause favoring St. Louis County.

2

Page Six is an addendum titled Financial Information. Notably, this page states, "Buyer agrees to provide Seller with financial statements and details lists of Buyers, *Shareholders, Members or owners* upon request by Seller … ." (emphasis added)  In other words, the form recognizes a distinction between the actual (and always singular) "Buyer" as opposed to its shareholders, owners, and members. Finally, each page of the Quotation template contains, in the bottom right corner, a small line designated "Buyer's Initials," though without the same "Duly Authorized Representative" notation contained in the signature block. Relators' initials appear on the initial lines on each page.

Based on Relators' initials on each page of Quotation without a qualifier as to their representative capacity, the trial court concluded that Arizon had succeeded in stating a claim against Relators individually[1] and that Relators had consented to personal jurisdiction by virtue of the Quotation's forum selection clause.   Additionally, the court concluded that it had personal jurisdiction over Relators under Missouri's long-arm statute (§506.500.1) in that Relators had visited Missouri for meetings with Arizon in connection with the transaction. In support of the latter conclusion, the court relied on Chromalloy Am. Corp. v. Elyria Foundry Co., 995 S.W.2d 1 (Mo. 1997). There, the Supreme Court of Missouri held that the defendant *corporation* subjected itself to long-arm jurisdiction when its president visited Missouri twice in connection with the transaction. Chromalloy did not address personal jurisdiction over the president individually, and ample Missouri precedent prohibits its exercise on these facts.

---

[1] Conversely, however, the trial court specifically found that Relators were *not* parties to a related non-disclosure agreement (which Relators had signed in their representative capacity without initialing each page), creating the puzzling inference that Relators could be held personally liable for payment but not for a breach of confidentiality.

We find instruction in <u>Capitol Group, Inc. v. Collier</u>, 365 S.W.3d 644 (Mo. App. E.D.). There, the subject document was a Credit Application for the purchase of materials on credit. The Terms of Sale section stated that the signatories "agree[d] to be jointly, severally, and individually responsible for the payment of any and all goods and/or services," and the defendant president signed and dated the signature block beneath this section. The trial court dismissed the claim against the president individually, reasoning that "the language in the Credit Application is insufficient to constitute a personal guaranty as a matter of law." <u>Id</u>. at 647. This court affirmed, observing:

> The general rule regarding liability incurred by an individual who signs an instrument on behalf of a principal is that the principal is liable, and not the individual, where the principal is disclosed and the capacity in which the individual signs the contract is evident. We presume that it was the agent's intention to bind his principal and not to incur personal liability, and an agent will not be bound personally except upon clear and explicit evidence of an intention to be bound. When considering whether a signatory to a contract intended to sign the agreement in his corporate or individual capacity, the determinative question is whether, in view of the form of the signature to the agreement, the language of the so called guaranty clause is sufficient to manifest a clear and explicit intent by the signatory to assume a personal guaranty contract. Accordingly, our courts have adopted the policy that in order to hold a corporate officer individually liable in signing a contract of guaranty, the officer should sign the contract twice, once in his corporate capacity and once in his individual capacity. By signing the contract twice, the officer executing the contract for his corporation clearly manifests his intent to assume personal liability.

<u>Capitol Grp., Inc. v. Collier</u>, 365 S.W.3d 644, 648 (Mo. App. E.D. 2012) (citing <u>Wired Music, Inc. v. Great River Steamboat Co.</u>, 554 S.W.2d 466 (Mo. App. 1977); <u>Headrick Outdoor, Inc. v. Middendorf</u>, 907 S.W.2d 297 (Mo. App. W.D. 1995); and <u>Cardinal Health 110, Inc. v. Cyrus Pharmaceutical, LLC</u>, 560 F.3d 894 (8th Cir. 2009)). Guided by these principles, this court in <u>Collier</u> concluded that the Credit Application did not

4

evidence a clear intent to bind its signatory in a personal capacity, particularly insofar as the document contemplated the corporate defendant as the buyer and contained only one signature block. "To unequivocally manifest an intent to be bound personally, a corporate officer must sign the contract twice, once in his corporate capacity and once in his individual capacity." Collier at 650.

Viewed through the lens of Collier and its predecessors, Arizon's Quotation does not evidence a clear intent to bind Relators in their personal capacity. The Quotation contains only one signature block, which Relators completed in their capacity as Duly Authorized Representatives of GBT. If Arizon intended to bind Relators personally, then why does its form not provide a second signature block for that purpose? "[A]n agent will not be bound personally except upon *clear and explicit evidence* of an intention to be bound." Id. at 648. (emphasis added) Further, while Arizon correctly notes that one's initials are sufficient to satisfy the statute of frauds (§432.010) where a full signature is lacking, Arizon fails to offer support, and we have found none, for its position that initials carry independent significance where a full signature is present. Moreover, even where initials alone are sufficient, they bind the principal and not the agent. *See e.g.*, Archbold v. Industrial Land Co., 249 N.W. 858 (Mich. 1933) ("A signature by initials is sufficient. As the name of the corporation appears in the body of the instrument, the signature of its agent need not further set up the corporate name nor the fact that he signs as an agent of the corporation."). Simply put, Relators' initials are wholly insufficient to manifest an intent to assume personal liability.

The trial court lacks personal jurisdiction over Relators. Their petition is granted. Respondent is directed to take no further action against Relators in their individual

5

capacities in Case No. 14SL-CC04233 except to dismiss them as defendants in the matter for lack of personal jurisdiction.

_____
Lisa Van Amburg, Chief Judge


Sherri B. Sullivan, J., and
Kurt S. Odenwald, J., concur.

6