**WIRED MUSIC, INC., Plaintiff-Appellant,**

v.

**Helmuth J. WIEMANN, Defendant-Respondent.**

**No. 33796.**

St. Louis Court of Appeals, Missouri.

May 25, 1971.

W. W. Sleater, St. Louis, for plaintiff-appellant.

J. Paul Allred, Jr., Ballwin, Eugene Portman, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

Action for damages for breach of a contract. The court, sitting without a jury,

entered judgment in favor of defendant, and plaintiff appealed. We affirm.

In its petition as originally filed plaintiff named as defendants Haystack, Inc., a corporation, and Helmuth J. Wiemann, also known as J. Helmuth Wiemann. Plaintiff alleged therein that defendant Haystack, Inc., was the operator of a business known as Haystack Restaurant; that defendant Wiemann executed a written contract with the plaintiff for Muzak program service to be supplied to the Haystack Restaurant; and that under the terms of said contract there was due, " * * * from the defendants * * *" the sum of $2,420.72, together with interest, attorney's fees and other legal charges. In its prayer plaintiff asked for judgment "against both defendants" for the foregoing sums. Prior to trial plaintiff dismissed without prejudice as to defendant Haystack, Inc.

The contract introduced in evidence by plaintiff, dated July 25, 1966, was prepared by plaintiff on one of plaintiff's printed forms. It is headed "Muzak Program Service Agreement," and the initial paragraph reads: "1. The undersigned subscriber authorizes Wired Music, Inc. (hereinafter referred to as 'Muzak') to make necessary arrangements to install proper and sufficient equipment to receive Muzak programs and make same available on the premises of (*typewritten*) *Haystack Restaurant, 8213 Clayton Road, St. Louis, Missouri* (hereinafter referred to as 'Subscriber')." (Printed) Since we are not concerned with the terms of the contract we need state only the manner of its execution, as indicated:

"IN WITNESS WHEREOF, the SUBSCRIBER and MUZAK have executed this Agreement in duplicate the date first above written. (Printed)

By (Printed) J. Helmuth Wiemann, Pres. (In ink)

Title (Printed)

Haystack Restaurant (typewritten)

For the Corporation (Printed)

Accepted for WIRED MUSIC, INC. (Printed)

By _____ "

Vice-President (Printed)

Lyman Earl Deason, now plaintiff's president, but its vice-president at the time the contract was executed, testified that he did not sign the duplicate retained by plaintiff, but that he did sign the duplicate given to defendant. Defendant makes no point regarding the absence of a signature on the exhibit, nor will we. There was, however, a variation if not a conflict between the testimony of Deason and Wiemann concerning the preparation of the agreement. Deason related that Wiemann had called him on the telephone and stated " * * * 'This is Joe Wiemann of the Haystack Restaurant, and I want to have your service,' or something to this effect. 'I want to know what it will cost.'" Wiemann testified that Deason had been calling on him at the restaurant for about six months for the purpose of selling plaintiff's service, and that the verbal acceptance of the charges was at the Restaurant; that Deason never asked Wiemann as to the name of the corporation; and that Deason drew up the Agreement and took it to the Restaurant for its execution. Both agreed that there was no conversation at the time it was executed. In fact, Deason did not see Wiemann at that time, as he gave the Agreement to a receptionist who took it into Wiemann's office where it was signed as shown above.

The record discloses that the actual corporate name of the establishment was Haystack, Inc., not Haystack Restaurant, and that Wiemann was its president. Plaintiff's theory as to its right to recover against Wiemann personally is that Wiemann did not reveal to plaintiff the correct name of the corporation of which he was president; that the company was therefore an undisclosed principal; and accordingly that the plaintiff was entitled to elect to hold liable either the undisclosed principal, or the agent personally, upon learning the facts. In this case, of course, plaintiff dismissed as to the principal and sought to hold the alleged agent.

■ In support of its contention plaintiff cites Section 401.020, RSMo 1959, V.A.M.S., which provided:

"Where the instrument contains or a person adds to his ·signature words indicating that he signs for or on behalf of a principal or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

That Section, as defendant points out, was originally enacted as § 20 of the Uniform Negotiable Instruments Law, Laws 1905, p. 246. The contract in question, of course, is not a negotiable instrument. Furthermore, prior to the execution of the Agreement in this case § 401.020 was repealed by the General Assembly in 1963, and replaced by what is now § 400.3–403, RSMo 1969, V.A.M.S. of the Uniform Commercial Code. That Section is part of Article 3 of the Code, which likewise deals with commercial paper. It is beyond dispute that the instant contract is not a negotiable instrument as that term is defined in § 400.3–104 of the Uniform Commercial Code.

Prior to the repeal of § 401.020 cited by plaintiff it was held that where an ambiguity appeared in the signature of a party to a negotiable instrument parol evidence was admissible to ascertain the real intent of the parties. Receivables Finance Corporation v. Hamilton, Mo., 408 S.W.2d 44, 46; Fricke v. Belz, 237 Mo.App. 861, 177 S.W.2d 702. In the first case, the Supreme Court said that in addition to the word " * * * 'Pres.' * * * usually the corporate name must appear in some manner on the instrument itself" in order that parol evidence might be admissible " * * * to ascertain the real intent of the parties. * * * " For example, in the latter case the note read, " * * * we promise to pay," and it was signed, "J. H. Belz Provision Company" on one line, and

"Henry Belz" on the next. This court held that parol evidence was admissible to establish that the signature of the individual was intended only to indicate that he had signed as the president of the corporation, and not in his individual capacity. The courts liberally construed § 401.020 to arrive at the true intent of the parties. Finch v. Heeb, Mo.App., 131 S.W.2d 146; Myers v. Chesley, 190 Mo.App. 371, 177 S.W. 326; Fricke v. Belz, supra.

■ Although neither § 401.020 cited by plaintiff or § 400.3–403 of the Uniform Commercial Code it replaced are applicable, since the instant agreement is not a negotiable instrument, similar rules govern the execution of a contract. Restatement of the Law of Agency, 2nd Ed., Section 322; Kraehe v. Dorsey, Mo.App., 432 S.W.2d 367. However, the weakness in plaintiff's case is that the contract prepared by plaintiff clearly shows on its face that it was the intention of the parties to enter into a contract between the plaintiff on the one hand and the corporate entity on the other, which plaintiff erroneously assumed was named Haystack Restaurant. It is equally apparent, from the face of the contract, that Wiemann signed the agreement in his capacity as president of the corporate entity whatever its precise name, and not in his individual capacity, for as appears he signed as "Pres." and "For the Corporation." Furthermore, defendant's testimony was that he signed only as president of the corporation, for the sole purpose of consummating the agreement between plaintiff and the corporation of which he was chief officer, and that subsequent rental payments were made to plaintiff by checks of Haystack, Inc. Deason testified that he had examined the signature "J. Helmuth Wiemann Pres." over the printed word "Title" and made no complaint about the manner in which it had been signed. And, of course, it was Deason who had typed in the presumed name of the corporate entity over the words "For the Corporation" printed on plaintiff's form. Applicable here is Comment b. under §

155 of the Restatement, Agency, which reads:

"b. The document or documents are interpreted as men of ordinary understanding familiar with the usages of language and the customs of agents in describing themselves would interpret them."

Accordingly, the judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur