**WIRED MUSIC, INC. OF THE GREAT MIDWEST, a corporation, Plaintiff-Appellant,**

v.

**The GREAT RIVER STEAMBOAT COMPANY, a corporation, Defendant,**

**and**

**Frank C. Pierson, Defendant-Respondent.**

**Nos. 37386 and 37873.**

Missouri Court of Appeals, St. Louis District.

June 14, 1977.

Motions for Rehearing and/or Transfer Denied July 21, 1977.

Applications to Transfer Denied Sept. 12, 1977.

W. W. Sleater, Clayton, for plaintiff-appellant.

Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for defendant-respondent.

GUNN, Judge.

█ Plaintiff-appellant, Wired Music, Inc., appeals from a judgment notwithstanding a jury verdict in favor of defendant-respondent, Pierson, on a suit for breach of contract. The central issue is whether Pierson is personally liable under a guaranty clause contained in a contract which he executed as president of the Great River Steamboat Co. We hold that Pierson was not personally liable under the contract and affirm the judgment.

█ We first indite the rather basic legal rubric that in reviewing a trial court's granting of a motion for directed verdict we must consider the evidence and all reasonable inferences which may be derived therefrom in the light most favorable to the party against whom the verdict was directed. *Jurcich v. General Motors Corp.*, 539 S.W.2d 595 (Mo.App.1976); *Boyle v. Colonial Life Ins. Co.*, 525 S.W.2d 811 (Mo.App. 1975). We are to determine here whether Wired Music Inc. made a submissible case.

The facts leading to this dispute are undisputed. Pierson was president of the

Great River Steamboat Co., a corporation owning and operating the "Becky Thatcher" riverboat and restaurant. A sales representative for Wired Music, Inc. contacted Pierson concerning the continuance of wired in music service on the "Becky Thatcher," which had been used by the previous owner. It was agreed that the music service would be continued, and Pierson, as President of the Great River Steamboat Co., signed the service agreement. Under the terms of the contract drafted by Wired Music Inc., a daily "Muzak Program Service" was to be provided to the "Subscriber" for a term of five years at a monthly charge of $58.50. The contract was executed by Pierson in the following manner:

"By  /s/ Frank C. Pierson, Pres.
            Title
    The Great River Steamboat Co.
    ~~Port of St. Louis Investments, Inc.~~
            For the Corporation"

In signing, Pierson crossed out "Port of St. Louis Investments, Inc." which had been incorrectly listed as the name of the corporation and inserted the proper name.

The Great River Steamboat Co. made payments under the contract totaling $234.15 and then breached the contract by making no further payments. It was stipulated that the breach of contract damages were $3,500. Wired Music, Inc. obtained a magistrate court judgment for $3,500 against both Pierson and the Great River Steamboat Co., which was appealed to the St. Louis Circuit Court. Prior to trial on the magistrate appeal, the Great River Steamboat Co. consented to a judgment against it. The circuit court trial resulting in this appeal, therefore, involved only Pierson as a defendant.

Wired Music, Inc. has sought to hold Pierson personally liable for the failure of the Great River Steamboat Co. to make payment under the contract. It relies on a provision in the service contract which reads:

"The individual signing this agreement for the subscriber guarantees that all of the above provisions shall be complied with."

Pierson testified that he had not been informed of any personal guaranty clause and that he had signed the contract without reading it. He further testified that he signed the agreement only in his capacity as president of the Great River Steamboat Co. Jury verdict was for Wired Music, Inc., but the trial court granted Pierson's motion for directed verdict, set aside the jury verdict and entered judgment for Pierson.

On this appeal, Wired Music, Inc. importunes us to view a single clause in a contract between two corporate entities as sufficient ligature to bind a corporate official (Pierson) to a personal guaranty of his corporation's obligations under the contract. We refuse to do so under the circumstances before us in this case. We are impelled to view with suspicion the so called guaranty provision in Wired Music, Inc.'s contract, especially where there is a patent absence of bargaining over the provision and no apparent consideration for it. See *National Refining Co. v. McDowell*, 201 S.W.2d 342 (Mo.1947).

The general rule regarding liability incurred by an individual who signs an instrument on behalf of another party is: where the principal is disclosed and the capacity in which the individual signs is evident, e. g., president, secretary, agent, the liability is the principal's and not the individual signing for the principal.[1] *Receivables Finance Corp. v. Hamilton*, 408 S.W.2d 44 (Mo.1966); *Reifeiss v. Barnes*, 166 S.W.2d 225 (Mo.App.1942). "The presumption, in such cases, is, that it was the agent's intention to bind his principal and not to incur personal liability, and an agent will not be bound personally, except upon clear and explicit evidence of an intention to be bound." *Bridges v. Rice*, 99 S.W.2d 531, 534 (Mo.App.1936). Of course, where the circumstances surrounding the transaction disclose a mutual intention to impose personal responsibility on the individual executing the agreement, the individual may be personally liable even though the form

---

1. See § 400.3–403 RSMo 1969 which codifies this rule for negotiable instruments.

of the signature is that of the agent. *Kalberg v. Gilpin Co.*, 279 S.W.2d 177 (Mo.App. 1955). But that is not the situation here.

In this case, the form of the signature was clearly that of an officer in his representative capacity for a corporate entity. Pierson took special care to designate the proper corporate name by crossing out the incorrect name before signing. He made it palpable that the contract was between Wired Music, Inc. and the Great River Steamboat Co. Hence, we are particularly attracted to the following statement in *Wired Music, Inc. v. Wiemann*, 468 S.W.2d 668, 670 (Mo.App.1971):

> " . . . the contract prepared by plaintiff clearly shows on its face that it was the intention of the parties to enter into a contract between the plaintiff on the one hand and the corporate entity on the other . . . .. It is equally apparent, from the face of the contract, that Wiemann [individual defendant] signed the agreement, in his capacity as president of the corporate entity whatever its precise name, and not in his individual capacity, for as appears he signed as 'Pres.' and 'For the Corporation.' Furthermore, defendant's testimony was that he signed only as president of the corporation, for the sole purpose of consummating the agreement between plaintiff and the corporation of which he was chief officer . . . ."

The manner of executing the contract in *Wired Music, Inc. v. Wiemann*, supra, is uniquely similar to this case.

■ The determinative issue here is whether, in view of the form of the signature to the agreement, the language of the so called guaranty clause is sufficient to manifest a clear and explicit intent by Pierson to assume a personal guaranty contract. See *Ogilvie v. Ogilvie*, 487 S.W.2d 40 (Mo. App.1972). We hold that standing alone it does not. Furthermore, the contract language imposing a personal obligation is inconsistent with the form of execution which

positively interdicted Pierson's participation to his official corporate capacity and not as an individual. Such inconsistency creates at least a latent ambiguity which permits the admission of parol evidence to explain the true intent of the parties. *Receivables Finance Corp. v. Hamilton*, supra; *Reifeiss v. Barnes*, supra; *Finch v. Heeb*, 131 S.W.2d 146 (Mo.App.1939); *Finch v. Heeb*, 231 Mo. App. 591, 107 S.W.2d 962 (1937); *Puget Sound Nat'l Bank v. Selivanoff*, 9 Wash. App. 676, 514 P.2d 175 (1973); *Brasher Motor and Finance Co. v. Anderson*, 20 Utah 2d 104, 433 P.2d 608 (1967). See generally, Annot., 70 A.L.R.3d 1276 (1976).

■ Pierson has stressed the fact that he neglected to read the contract prior to its signing. The law is well settled that one who signs a contract is presumed to have known its contents and accepted its terms. *Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477 (Mo.banc 1972); *Wallach v. Joseph*, 420 S.W.2d 289 (Mo.1967). Thus, Pierson's failure to examine the terms of the instrument would afford no defense to the corporation regarding its obligations under the contract, as his signature was sufficient to bind the corporation. Such neglect is a relevant circumstance, however, in ascertaining Pierson's intent to assume personal liability, as his personal signature appeared nowhere on the instrument.[2] Without knowledge of the guaranty clause he could not have possessed the requisite intent to assume obligations under it. The record is destitute of any indication that Pierson was ever made aware of his potential personal liability under the "guaranty clause," and he steadfastly denied any such knowledge. Wired Music, Inc. drafted the contract, and its agents procured Pierson's corporate signature without explanation of or bargaining over its terms. Under these circumstances we find that there was an absence of the meeting of the minds as to the nature and the extent of the personal obligations imposed, essential to the formation of a binding guaranty. See *Shepard v. Glick*, 404 S.W.2d 441 (Mo.App.1966).

---

2. In *Linro Medicine Co. v. Moon*, 190 Mo.App. 366, 177 S.W. 322 (1915), the fact that an individual guarantor had failed to read the contract was held to be relevant to determine whether the individual had knowledge of the acceptance of the guaranty.

■ We are aware that the Florida Court of Appeals in *Steele v. Hallandale, Inc.*, 125 So.2d 587 (Fla.App.1960), held that where the terms of the contract clearly impose personal liability on the signer he may be personally bound thereunder even where he signs as an agent for a disclosed principal. That decision, however, was an interlocutory appeal from the trial court's denial of defendant's motion to dismiss the complaint. "This being an interlocutory appeal, it is only necessary that the allegations in the complaint show that the contract involved makes Steele (defendant) individually responsible to plaintiffs under certain circumstances. *Whether he is or is not can only be determined by the evidence.*" (emphasis added) *Steele v. Hallandale, Inc.*, supra at 588. Thus, the court merely refused to hold that as a matter of law an officer executing a contract for his corporation in his official capacity cannot be held personally liable thereunder. We likewise refuse to declare such a principle as a matter of law.[3] We do hold, however, that where the form of an agent's signature is inconsistent with the assumption of personal liability under the terms of the contract that an ambiguity is created allowing parol evidence to explain the true intent of the parties.

■ Three decisions[4] of the New York courts support our conclusion that an agent of a disclosed principal may not be personally bound under a guaranty clause in a contract between the principal and another party, unless there is evidence of a clear and explicit intent to do so. Though highly instructive they are not directly on point, as all three were decided on the basis of the statute of frauds.[5] These cases hold that personal liability through a guaranty clause may not be imposed on an officer who signs a contract for the corporation in his capacity as an officer, as his signature is that of the corporation alone and does not meet the statute of frauds requirement that the instrument be signed by the party to be charged. The court in *Salzman Sign Co., Inc. v. Beck*, 10 N.Y.2d 63, 217 N.Y.S.2d 55, 57, 176 N.E.2d 74, 76 (1961), cites the following as the policy behind its holding:

"In modern times most commercial business is done between corporations, everyone in business knows that an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice—once as an officer and again as an individual. There is great danger in allowing a single sentence in a long contract to bind individually a person who signs only as a corporate officer. In many situations the signing officer . . . may be stuck for a very large obligation which he never dreamed of assuming."

We find the foregoing statement to be reasonable. We therefore adopt the policy that in order to hold a corporate officer

---

3. But see *St. Joseph Valley Bank v. Napoleon Motors Co.*, 230 Mich. 498, 202 N.W. 933 (1925), where the defendant, a corporation, entered into a contract with plaintiff, a bank, under which the latter agreed to buy certain unmatured notes of the former. Contained in the instrument was a clause stating that "Full performance of seller's obligations under this contract is individually guaranteed" by the following persons:

Napoleon Motors Co.
/s/ Frank Trude, Vice Pres.,
/s/ W.G. Rath, Secy-Treas.

When the notes were not paid plaintiff sued the corporation as well as the individual signers under the guaranty clause. The court noted that standing alone the contract terms would impose a personal guaranty. "But here the corporation alone, Napoleon Motors Company, signed the guaranty. It could sign only by its

officer or officers. We cannot ignore its name so written. And without the signing of its officer or officers its signature would be incomplete. The undertaking so signed must be taken conclusively to be that of the corporation." Id. at 934. The court held that as a matter of law the corporation only was bound and parol evidence was not admissible to show a contrary intent.

4. *Savoy Record Co. v. Cardinal Export Corp.*, 15 N.Y.2d 1, 254 N.Y.S.2d 521, 203 N.E.2d 206 (1964); *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 217 N.Y.S.2d 55, 176 N.E.2d 74 (1961); *Warren-Connolly Co., Inc. v. Saphin*, 283 App. Div. 391, 128 N.Y.S.2d 272 (S.Ct.1954).

5. Statute of frauds is an affirmative defense which must be pleaded but was not done in this case. Rule 55.08.

individually liable in signing a contract of guaranty, as in this case, the officer should sign the contract twice—once in his corporate capacity and once in his individual capacity. If the parties have mutually agreed and intended that the officer executing the contract for his corporation is to assume personal obligations thereunder, the simple but unequivocal act of manifesting such intent can be accomplished by having the officer also sign in his individual capacity. Such practice, in addition to making the guaranty agreement explicit, would promote the policies behind the statute of frauds.

In this case, evidence is lacking to establish that Pierson explicitly intended a personal guaranty. The evidence presented was that Pierson signed the agreement only in his corporate capacity—not as an individual. There was a total absence of any evidence from which the jury could conclude otherwise. It was therefore proper for the trial court to direct a judgment for Pierson.

Judgment affirmed.

KELLY, P. J., and REINHARD, Special Judge, concur.