

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

DAVID L. JOHNSON, )
)
Appellant-Respondent, ) WD86006
)(Consolidated with WD86058)
v. )
)OPINION FILED:
)  June 25, 2024
MARIO USERA, )
)
Respondent-Appellant. )

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable David P. Chamberlain, Judge**

**Before Division Two:**  Thomas N. Chapman, Presiding Judge,
Karen King Mitchell and W. Douglas Thomson, Judges

This appeal arises out of a lawsuit initiated by David Johnson against Mario Usera, alleging breach of contract, defamation, false light invasion of privacy, and interference with a business expectancy (the current lawsuit).  In that lawsuit, Usera filed two counterclaims against Johnson for breach of contract.  Both Johnson's and Usera's claims arise from alleged breaches of a settlement agreement between Johnson and Usera (in his individual capacity), entered into in 2014 (the 2014 settlement agreement).  In their capacity as defendants in the current lawsuit, both Johnson and Usera moved for

summary judgment, and those motions were granted.  Johnson now appeals from the grant of summary judgment in favor of Usera on all four of Johnson's claims.  Usera filed a separate appeal from the entry of summary judgment in favor of Johnson on Usera's counterclaims; we consolidated the appeals.

Johnson raises two points on appeal.  First, Johnson asserts the motion court erred in granting summary judgment in favor of Usera because Usera failed to properly controvert Johnson's additional statement of material facts (filed in support of Johnson's response to Usera's summary judgment motion), and those additional facts establish "elements of Johnson's prima facie claims."  Second, Johnson argues the motion court erred in denying his motion to compel Usera to provide discovery responses based on information Usera obtained in his corporate capacity.  Usera raises one point on appeal. He claims the motion court erred in granting summary judgment for Johnson on Usera's counterclaims because Johnson was not entitled to judgment as a matter of law in that Johnson's actions materially breached the 2014 settlement agreement.  Finding no error, we affirm.

## Background[1]

Johnson is the managing member of Jefferson Acquisition, LLC (Jefferson), and a stockholder of CCSB Financial Corporation (CCSB), the parent company of Clay County

---

[1] "We review 'the record in the light most favorable to the party against whom judgment was entered, and give[ ] the non-movant the benefit of all reasonable inferences from the record.'" *Vescovo v. Kingsland*, 628 S.W.3d 645, 653 (Mo. App. W.D. 2020) (quoting *Truman Med. Ctr., Inc. v. Progressive Cas. Ins. Co.*, 597 S.W.3d 362, 365-66 (Mo. App. W.D. 2020)).

Savings Bank. Usera is the President and Chief Executive Officer (CEO) of CCSB. The current lawsuit between Johnson and Usera stems from Johnson's attempt to have his business associates elected to CCSB's Board of Directors.

On August 23, 2012, Johnson filed a lawsuit captioned *Johnson v. Davis, et al.*, Case No. 1216-CV22079, in the Circuit Court of Jackson County, Missouri (the previous lawsuit), against John Davis (now deceased) and Usera, alleging libel, defamation, false light invasion of privacy, tortious interference with business expectancy, and civil conspiracy in connection with statements Davis and Usera made in a July 2, 2012 stockholder letter criticizing Jefferson and Johnson. Davis and Usera answered, denied the allegations, and eventually moved for summary judgment. The court granted summary judgment in favor of Davis and Usera, and Johnson appealed. While Johnson's appeal was pending, the parties entered into the 2014 settlement agreement, and Johnson dismissed his appeal. The 2014 settlement agreement contains the following mutual non-disparagement clause:

> The parties to this Release and Settlement Agreement also agree not to public[ly] or privately disparage one another in regards [to] the Claims, the Lawsuit, and/or the Claims as they related to the Lawsuit.

(the non-disparagement clause). The 2014 settlement agreement defined "Lawsuit" as the lawsuit captioned *Johnson v. Davis, et al.*, case number 1216-CV22079 (the 2012 lawsuit), and "Claims" as "certain claims" Johnson asserted "against Davis/Usera arising out of [the] July 2, 2012 correspondence from CCSB . . . to its stockholders."

On July 29, 2020, Johnson commenced the current lawsuit by filing in Clay County a petition against Usera, in his individual capacity, alleging breach of contract

3

(the non-disparagement clause), defamation, false light invasion of privacy, and interference with business expectancy, all of which arise from a supplemental proxy letter dated January 6, 2020, from CCSB to its stockholders (the proxy letter) and an attached report from CCSB's Nominating Committee (the Nominating Committee report).[2] The proxy letter and Nominating Committee report pertained to the election of members of CCSB's Board of Directors in January 2020; the Nominating Committee report was critical of two Board nominees associated with and supported by Johnson. The proxy letter was on CCSB letterhead and was signed by the then Board of Directors of CCSB, including Usera who signed as "President and CEO." Usera was not a member of the Nominating Committee.

The following statements in the Nominating Committee report form the basis for the claims in the current lawsuit:

> Mr. Johnson serves as a [CCSB] Board member, and . . . owns approximately 23% of the common stock of another banking institution, First Missouri Bank, which has an office in Kearney, Missouri, and directly competes with [CCSB's] subsidiary bank.
>
> . . .
>
> In 2011, [the Vice President of the Jefferson Group, a Johnson-affiliated company] obtained [CCSB's] Non-Objecting Beneficial Owner (NOBO) information directly through Broadridge Financial Solutions, Inc. [Broadridge]. Broadridge . . . had advised in a letter that [the Vice President] was provided with this list because [the Vice President] indicated on the form that [the Vice President] represented CCSB . . . .
>
> . . .

---

[2] One year later, Johnson filed an amended petition, but the amendments are not significant for purposes of this appeal.

[CCSB's] Nominating Committee believes that the dissident group[3] has engaged in practices that have attempted to take advantage of stockholders as evidenced by a lawsuit filed by one shareholder. In 2017, a default judgment was entered against Mr. Johnson and an entity controlled by Mr. Johnson, Bond Purchase, LLC, that ruled that Mr. Johnson and Bond Purchase, LLC had acted in concert to wrongfully obtain shares of CCSB . . . by forcing an unauthorized foreclosure sale of the common stock of CCSB . . . .

. . .

The nominees and their affiliated entities have taken actions that have had an adverse financial impact on [CCSB], including past lawsuits against [CCSB] and individually against former Chairman and C[EO] John David and current President and C[EO] Mario Usera. Their lawsuits were dismissed by the courts without merit.

. . .

The Nominating Committee has ample reasons to believe that the dissident group has personal interests which conflict with the best interests of [CCSB] and its other shareholders. The group's inability to set its personal interests aside are evidenced by its past interference with [CCSB]'s attempt to market itself for sale following the economic downturn early in the decade. At that time, Mr. Johnson demanded that he be able to make an offer independent of a potential offer from First Missouri Bank, at which he was a director and a significant shareholder.

Usera filed an answer and asserted two counterclaims—both alleging breach of the non-disparagement clause. The first breach alleged by Usera occurred at a CCSB stockholder meeting on January 23, 2020. At that meeting, Johnson reportedly announced that, by signing the proxy letter, Usera had "violated the terms of the [2014] settlement agreement." Johnson also "wagged his finger" at Usera, demanding that he "admit the statements [in the proxy letter and Nominating Committee report] were not

---

[3] The "dissident group" refers to a group of CCSB stockholders that includes Johnson and his affiliates.

true, do the right thing, and publicly apologize to [the Vice President]." The second alleged breach occurred at a January 28, 2021, stockholder meeting, where Johnson stated, "this Board is spending hundreds of thousands of dollars to defend [Usera] . . . who violated a contract he and I have and I have sued him personally in Clay County . . . violated the contract and defamed [the Vice President] . . . [he] owes her an apology."

Both parties moved for summary judgment (as defendants) on the other parties' claims. In his summary judgment motion, Usera argued that Johnson's breach-of-contract claim failed because the proxy letter and Nominating Committee report did not "disparage" Johnson as that term is commonly defined and the statements at issue were corporate statements for which Usera bore no personal liability. As to Johnson's defamation claim, Usera asserted that the allegedly defamatory statements are true, absolutely privileged, qualifiedly privileged, incapable of defamatory meaning, not published to a third party, or relate to a limited purpose public figure who has not made the requisite showing of legal malice. Usera further argued that (1) Johnson's claim of false light invasion of privacy failed because Johnson asserted the statements at issue are untrue and (2) there is no evidence Usera induced or caused a breach of Johnson's business expectancy. Johnson filed a response in which he admitted or denied each of Usera's facts and included additional facts. Usera did not file a timely reply to Johnson's additional facts.

Johnson then moved for summary judgment on Usera's breach-of-contract counterclaims, arguing that Johnson's statements and actions at the shareholder meetings in 2020 and 2021 were not encompassed by the 2014 settlement agreement and, thus, did

6

not violate the non-disparagement clause. Usera filed a response in which he admitted all but one of Johnson's facts.

On October 20, 2022, the motion court held a hearing on the parties' competing motions for summary judgment. Following argument, the court took the motions under advisement. On October 28, 2022, Usera filed an amended motion for leave to file out-of-time legal objections to Johnson's statement of additional material facts. The court sustained Usera's motion for leave and noted that, in deciding the summary judgment motions, the court "did in fact consider all the pleadings." Johnson then requested and was given fifteen days to file a sur-reply to Usera's objections to Johnson's statement of additional material facts, and the court agreed to stay entry of judgment until it received Johnson's sur-reply.

On January 10, 2023, the motion court granted both parties' motions for summary judgment, noting that "the motions, the responses, and the replies, and [Johnson's sur-reply] show that there is no genuine issue as to any material fact and that each moving [defendant] is entitled to judgment as a matter of law." This appeal follows. Additional facts will be provided in the analysis, as necessary, to address the parties' points on appeal.

**Analysis**

We begin our analysis with Johnson's points on appeal. Johnson asserts the motion court erred in (1) granting summary judgment in favor of Usera because Usera failed to properly controvert Johnson's additional statement of material facts, resulting in Usera's admission of those additional facts, and those additional facts establish "elements

7

of Johnson's prima facie claims"; and (2) denying Johnson's motion to compel Usera to respond to discovery using information Usera obtained in his corporate capacity. We address these points out of order.

### I. Johnson failed to show that the motion court abused its discretion in denying his motion to compel.

Johnson sued Usera in only his personal capacity. When answering interrogatories and requests for production propounded by Johnson, Usera limited his answers to information and documents within his personal knowledge or possession as to the drafting and publication of the proxy letter and Nominating Committee report. In response, Johnson moved to compel Usera to provide all information available to him, including information Usera obtained in his corporate capacity as President and CEO of CCSB. The court heard arguments on Johnson's motion, which the court later denied by docket entry.

"[W]e review a trial court's denial of a motion to compel discovery for an abuse of discretion." *Hale v. Burlington N. & Santa Fe Ry. Corp.*, 638 S.W.3d 49, 63 (Mo. App. S.D. 2021) (quoting *City of Byrnes Mill v. Limesand*, 599 S.W.3d 466, 475 (Mo. App. E.D. 2020)).

> We allow the trial court broad discretion in the control and management of discovery, but we will find it abused its discretion if its ruling was clearly against the logic of the circumstances then before it and so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration.

*Id.* at 63-64 (quoting *City of Wentzville v. Dodson*, 133 S.W.3d 543, 548 (Mo. App. E.D. 2004)). "'When reviewing the [circuit] court's decision regarding issues arising from

8

pre-trial discovery,' . . . [we] examine[] whether any abuse of [the court's] broad discretion 'results in prejudice or unfair surprise.'" *Main v. Main*, 685 S.W.3d 620, 631 (Mo. App. E.D. 2024) (quoting *Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 172 (Mo. App. W.D. 2021)). "The appellant bears the burden of establishing that the circuit court abused its discretion." *Geiler v. Liberty Ins. Corp.*, 621 S.W.3d 536, 547 (Mo. App. W.D. 2021).

As the petitioner in the current lawsuit, Johnson opted to sue Usera in only his individual capacity.[4] Johnson does not point to any precedent supporting his interpretation that Usera was obligated to disclose information he obtained in his corporate capacities with CCSB, and our research has not revealed any such precedent. Moreover, even if the motion court erred in denying Johnson's motion to compel, Johnson cannot demonstrate prejudice because he was otherwise able to obtain the information he sought. *See Main*, 685 S.W.3d at 631. Johnson noticed a records-custodian deposition of CCSB; the notice sought, in part, production of documents including those pertaining to the drafting and publication of the proxy letter and Nominating Committee report. The court allowed the deposition over Usera's objections.

Johnson simply has not met his burden to show that the motion court's denial of his motion to compel "was clearly against the logic of the circumstances then before it and so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration." *Hale*, 638 S.W.3d at 63-64 (quoting *City of Wentzville*, 133

---

[4] Usera signed the 2014 settlement agreement in his individual capacity. We presume that is why Johnson sued Usera individually in the current lawsuit.

S.W.3d at 548). Thus, Johnson failed to show that the motion court abused its discretion in denying his motion to compel.

Johnson's Point II is denied.

**II.     The motion court did not err in granting summary judgment for Usera on Johnson's claims for breach of contract, defamation, false light invasion of privacy, and interference with a business expectancy.**

Johnson's argument on appeal, as articulated in his first point relied on, is that the motion court erred in granting summary judgment for Usera because Usera failed to properly controvert Johnson's additional statement of material facts; thus, he claims those additional facts were admitted, and those additional facts establish "elements of Johnson's prima facie claims."

"We review the grant of summary judgment *de novo.*" *Amoroso v. Truman State Univ.*, 683 S.W.3d 298, 302 (Mo. App. W.D. 2024) (quoting *Malin v. Mo. Ass'n of Cmty. Task Forces*, 669 S.W.3d 315, 320 (Mo. App. W.D. 2023)). "When the trial court's order does not state the reasons for its grant of summary judgment, we presume that the trial court based its decision on the grounds raised in the movant's motion for summary judgment." *Id.* at 302-03 (quoting *Seymour v. Switzer Tenant LLC*, 667 S.W.3d 619, 625 (Mo. App. W.D. 2023)). "But, '[t]he trial court's grant of summary judgment may be affirmed on any theory supported by the record.'" *Id.* at 303 (quoting *Seymour*, 667 S.W.3d at 625-26).

"Summary judgment is appropriate when there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Malin*, 669 S.W.3d at 320). "Our review of summary judgment is limited to the

10

undisputed material facts established in the process set forth in Rule 74.04(c); we do not review the entire trial court record." *Id.* (quoting *Bracely-Mosley v. Hunter Eng'g Co.*, 662 S.W.3d 806, 810 (Mo. App. E.D. 2023)). "We look exclusively to the step-by-step procedure mandated by Rule 74.04 to determine whether there is a genuine issue of material fact." *Id.* (quoting *Bracely*, 662 S.W.3d at 810). "Even if uncontroverted, conclusory statements and legal conclusions 'are not facts for purposes of Rule 74.04.'" *Id.* (quoting *Metro. Nat'l Bank v. Commonwealth Land Title Ins. Co.*, 456 S.W.3d 61, 68 (Mo. App. S.D. 2015)).

A defending party is entitled to summary judgment if he demonstrates one of the following:

> (1) facts negating any one of [Johnson's] elements; (2) that [Johnson] has presented insufficient evidence to allow the finding of the existence of any one of [his] elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense.

*Id.* (quoting *Malin*, 669 S.W.3d at 320). Usera asserts that he is entitled to summary judgment because his material facts negate elements of Johnson's claims and, with respect to Johnson's defamation claim, also establish affirmative defenses to that claim. Usera's motion for summary judgment stated "with particularity in separately numbered paragraphs" facts that he claims are material and as to which he claims there is no genuine issue, "with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts," as required by Rule 74.04(c)(1).

11

"Once the movant has established [a prima facie] showing, the burden shifts to the non-movant, who must demonstrate 'that one or more of the material facts relied upon by the [moving] party is genuinely disputed.'" *Id.* (quoting *Vescovo v. Kingsland*, 628 S.W.3d 645, 653 (Mo. App. W.D. 2020)). In response to Usera's motion for summary judgment and statement of uncontroverted facts, Johnson admitted or denied each of Usera's facts and supported his denials with references to evidence, pursuant to Rule 74.04(c)(2). And Johnson set forth additional facts that he claimed were material and established elements of his prima facie claims. "If the non-movant files a statement of additional material facts, the process repeats itself, but with the non-movant stating material facts, supported in the same manner, to which the movant must respond." *Id.* (quoting *Bracely*, 662 S.W.3d at 810). If the movant does not properly deny an additional statement of fact, that fact is admitted. *Id.*

On appeal, Johnson does not allege that the supporting facts set out by Usera are either immaterial or would be insufficient to support summary judgment if uncontroverted. Nor does Johnson rely on his denials of Usera's facts to demonstrate that those facts are controverted. Instead, on appeal, Johnson relies exclusively on the additional facts set out in his response. He claims that Usera failed to controvert those additional facts, they are thereby admitted, and they establish "*elements* of Johnson's prima facie claims." To be clear, as the non-movant, Johnson does not bear the burden of establishing the elements of his claim. Therefore, we interpret Johnson's argument to mean that his additional material facts conflict with the facts asserted by Usera, thus placing Usera's alleged uncontroverted facts in dispute.

12

**A.      Johnson's additional facts are uncontroverted.**

Usera did not timely reply to Johnson's response in opposition to Usera's motion for summary judgment, which included Johnson's statement of additional facts. The motion court granted leave for Usera to file out of time his reply to Johnson's response, but Usera's reply did not comply with Rule 74.04. Where, as here, the non-movant (Johnson) files a statement of additional material facts, the movant (Usera) must respond by either admitting or denying each of the additional facts with specific references to the record. *Amoroso*, 683 S.W.3d at 303. Usera did not admit or deny any of Johnson's additional facts. Instead, Usera lodged legal objections to Johnson's additional facts, including that they were not facts but legal conclusions. Even if uncontroverted, legal conclusions are not facts for purposes of Rule 74.04. *Id*. Because Usera did not properly deny Johnson's additional facts, to the extent that they are *facts*, they are admitted. *Id.* Thus, we must determine the nature of Johnson's "additional material facts."

**B.      Johnson's additional facts do not controvert material facts set out by Usera so as to make the motion court's grant of summary judgment erroneous.**

In his opening brief, Johnson points to the following admitted additional facts as "establish[ing] elements of Johnson's prima facie claims":

1. Johnson performed his obligations under the [2014 settlement a]greement.

3. [Usera] is precluded from disparaging Johnson pursuant to the [2014 settlement a]greement.

4. The [2014 settlement a]greement, pursuant to the non-disparagement language . . . precluded [Usera] from discussing the claims of the [2012

13

lawsuit], the [2012 lawsuit], or the claims as they relate to the [2012 lawsuit].

5. [Usera] breached the [2014 settlement a]greement by discussing the claims of the [2012 lawsuit], the [2012 lawsuit], or the claims as they relate to the [2012 lawsuit] by and through publication of the [proxy l]etter.

6. Johnson has been damaged by the publication of the [proxy l]etter.

7. [Usera] signed the [proxy] letter.

13. [Usera], in contravention of the [2014 settlement a]greement, repeated claims which were raised in the [2012 lawsuit], including . . .

15. [Usera] published the following statements in the [proxy l]etter . . .

17. Johnson has been damaged, by more than $14,000, by seeking to remedy the accusations made against him in the [proxy l]etter.

18. [Non-party board member] read the [proxy l]etter and altered his vote in the 2020 election because of its contents.

22. The [proxy l]etter was distributed to government officials which did not regulate CCSB . . . in its normal course of business.

24. The [proxy l]etter was distributed to regulators of CCSB . . . .

26. [Usera] did not inform his peers on the Board of Directors as to the existence of the [2014 settlement a]greement.

29. [Usera] did not conduct any due diligence before sending the [proxy l]etter.

30. [Usera] did not interview a single person before publishing the [proxy l]etter to ensure accuracy on the information therein.

31. [Usera] did not contact a single person to discuss the [proxy l]etter before publishing the [proxy l]etter to ensure accuracy on the information therein.

32. [Usera] did not send a single person a draft of the [proxy l]etter to ensure accuracy on the information therein.

33. [Usera] knew he was personally bound by the [2014 a]greement.

As the party appealing the grant of summary judgment, Johnson must "demonstrate that the trial court's judgment was incorrect on any basis supported by the record and the applicable law." *Est. of Williams v. Bauman*, 660 S.W.3d 658, 663 (Mo. App. W.D. 2023) (quoting *Wesley v. Wells Fargo Bank, N.A.*, 569 S.W.3d 436, 444 (Mo. App. W.D. 2018)). As noted above, where, as here, the motion court did not provide reasons for its judgment, we presume the court based its decision on grounds raised in Usera's motion. *Amoroso*, 683 S.W.3d at 302-03. Those grounds include that the statements at issue (1) did not disparage Johnson; (2) were corporate statements for which Usera is not personally liable; (3) are true, absolutely privileged, qualifiedly privileged, incapable of defamatory meaning, not published to a third party, or relate to a limited purpose public figure who has not made the requisite showing of legal malice; and (4) did not induce or cause a breach of Johnson's business expectancy. Johnson fails to challenge all the grounds for summary judgment articulated by Usera or fails to set out additional facts that controvert material facts set out by Usera in support of summary judgment.

Johnson's primary claim against Usera is for breach of contract. Specifically, Johnson claims that Usera, acting in his personal capacity, breached the non-disparagement clause of the 2014 settlement agreement by participating in the drafting of the Nominating Committee report and signing and distributing the proxy letter. "The essential elements of a breach of contract action include '(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the

15

plaintiff.'" *Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 327 (Mo. App. W.D. 2017) (quoting *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)).

In support of his motion for summary judgment, Usera stated that he was not a member of the Nominating Committee and that he signed the letter in only his official capacity. In support of his first allegation, Usera provided deposition testimony and Nominating Committee meeting minutes showing that he was not a member of the Committee during the relevant time period.[5] In support of this second allegation, Usera offered the proxy letter that shows he signed the letter in his official capacity as President and CEO of CCSB only, not in his individual capacity. Therefore, Usera argues that the uncontroverted facts negate the element that he, acting in his individual capacity, breached the 2014 settlement agreement.

The legal effect of a letter, "like that of a contract, . . . is a question of law." *Hay v. Bankers' Life Co.*, 231 S.W. 1035, 1038 (Mo. App. 1921). "The general rule regarding liability incurred by an individual who signs an instrument on behalf of a principal is that the principal is liable, and not the individual, where the principal is disclosed and the capacity in which the individual signs the contract is evident." *Capitol Grp., Inc. v. Collier*, 365 S.W.3d 644, 648 (Mo. App. E.D. 2012). "We presume 'that it was the agent's intention to bind his principal and not to incur personal liability, and an agent will not be bound personally, except upon clear and explicit evidence of an intention to be

---

[5] Johnson attempted to controvert Usera's statement that he was not a member of the Nominating Committee, but Johnson did not cite to documents supporting this assertion.

16

bound.'" *Id.* (quoting *Wired Music, Inc. v. Great River Steamboat Co.*, 554 S.W.2d 466, 468 (Mo. App. 1977)). "Accordingly, our courts have adopted the policy that 'in order to hold a corporate officer individually liable in signing a contract . . . the officer should sign the contract twice[,] once in his corporate capacity and once in his individual capacity." *Id.* (quoting *Wired Music*, 554 S.W.2d at 470-71. By doing so, "the officer . . . clearly manifests his intention to assume personal liability." *Id.*

Here, Usera signed the proxy letter as only the President and CEO of CCSB and a member of its Board of Directors; he did not sign the letter in his personal capacity, and nothing in the letter provides "clear and explicit evidence" of his intention to be bound personally by the proxy letter. Yet, Johnson chose to sue Usera in his individual capacity only, and none of Johnson's additional facts controvert the plain language of the signature block on the proxy letter. Johnson appears to rely on his additional fact stating that Usera breached the 2014 settlement agreement. But, even if uncontroverted, whether Usera breached the 2014 settlement agreement is a legal conclusion and, as such, is not a fact for purposes of Rule 74.04. *Amoroso*, 683 S.W.3d at 303. Thus, as a matter of law, the uncontroverted facts negate the element that the defendant, Usera in his personal capacity, breached the contract, and Johnson's additional facts fail to controvert Usera's facts.

Similarly, Johnson's claims for defamation, false light invasion of privacy, and tortious interference with a business expectancy are brought against Usera in his individual capacity. But the alleged underlying acts—participating in the drafting of, signing, and publication of the proxy letter—were not performed by Usera in his personal

17

capacity.  Therefore, the uncontroverted facts negate that Usera, in his individual capacity, engaged in the necessary conduct.  In addition, there are other uncontroverted facts that support the grant of summary judgment on these claims.

"Under Missouri law, the elements of defamation are (1) publication (2) of a defamatory statement (3) that identified the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) that damages the plaintiff's reputation." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000).  In his answer to Johnson's petition, Usera pleaded three affirmative defenses to Johnson's defamation claims—that the allegedly defamatory statements are true, qualifiedly privileged, and relate to a limited purpose public figure.[6]  Usera moved for summary judgment on these same grounds, among others.

On appeal, Johnson does not argue that Usera's affirmative defenses were not properly plead.  As noted above, on appeal, Johnson relies exclusively on the additional facts set out in his response.  In his first point relied on, Johnson argues only that, by not responding to his additional facts, Usera admitted "elements of [Johnson's] prima facie

---

[6] A limited purpose public figure is one who "command[s] sufficient continuing public interest and ha[s] sufficient access to the means of counterargument to be able to expose through discussion the falsehood and fallacies of the defamatory statements." *Warner v. Kan. City Star Co.*, 726 S.W.2d 384, 385 (Mo. App. W.D. 1987) (quoting *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 155 (1967)).

Where a plaintiff in a defamation case is alleged to be a limited purpose public figure, the defendant "is protected by the First Amendment from liability for damages for defamation, unless the defamatory statements were published with actual malice . . . that is, with knowledge that the statements were false, or with a reckless disregard as to whether they were true or false." *Id.*  Legal malice "requires proving a culpable mental state." *Brockman v. Regency Fin. Corp.*, 124 S.W.3d 43, 48 (Mo. App. W.D. 2004) (quoting *Fust v. Francois*, 913 S.W.2d 38, 50 (Mo. App. E.D. 1995)).

claims." Johnson's point relied on does not suggest that his additional facts demonstrate that there is a genuine dispute as to the existence of each fact necessary to support Usera's affirmative defenses.

Although not addressed in his point relied on, in the argument portion of his brief, Johnson argues that his additional facts demonstrate a genuine issue as to whether the affirmative defense of qualified privilege applies. "The argument section of an appellant's brief serves as the vehicle by which an appellant demonstrates why the trial court ruling or action, as specifically identified in the point relied on, is erroneous because of the legal reasons, as concisely stated in the point relied on . . . supports the stated legal reasons for the claim of reversible error. *Hale*, 638 S.W.3d at 61. Thus, "[t]he argument *shall* be limited to those errors included in the 'Points Relied On.'" *Id.* (quoting Rule 84.04(e)) (emphasis in original). "Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not preserved for our review." *Id.* (quoting *Davis v. Wieland*, 557 S.W.3d 340, 352 n.10 (Mo. App. W.D. 2018)).

Even if we were to reach arguments made in the argument portion of Johnson's brief that are outside of the scope of the point relied on, Johnson's claim that the motion court erred in granting summary judgment would fail because, while some of Johnson's additional facts challenge elements of Usera's qualified privilege defense, they fail to demonstrate that there is a genuine dispute as to the existence of facts necessary to support all of Usera's affirmative defenses. In the argument portion of his brief, Johnson argues that his additional facts demonstrate that Usera acted with reckless disregard. It appears that Johnson intends this allegation to demonstrate a lack of truthfulness and

actual malice. In support of his allegation of reckless disregard, Johnson relies on additional facts that Usera did not consult with anyone or conduct any "due diligence" when drafting the proxy letter. These facts, even if admitted, do not demonstrate reckless disregard.

"Reckless disregard exists when there is 'a high degree of awareness of … probable falseness' of the statement or there are 'serious doubts as to [its] truth.'" *Wandersee v. BP Products N.Am., Inc.*, 263 S.W.3d 623, 632 (Mo. banc 2008) (quoting Rest. 2d of Torts § 580)). "Due diligence is defined as that degree of assiduity, industry or careful attention called for under the circumstances." *Hall v. Utley*, 443 S.W.3d 696, 702 (Mo. App. W.D. 2014) (quoting *Pijanowski v. Pijanowski*, 272 S.W.3d 321, 325 (Mo. App. W.D. 2008)). The failure to conduct due diligence does not demonstrate a lack of truthfulness or actual malice. Thus, Johnson's additional uncontroverted facts do not demonstrate a genuine dispute as to the existence of each fact necessary to support all of Usera's affirmative defenses.

Finally, as to Johnson's claim for tortious interference with a business expectancy, Usera offered facts negating elements of the only non-remote instance of tortious interference alleged by Johnson in his petition, and Johnson failed to show those facts are controverted, immaterial, or otherwise insufficient. The elements of a business expectancy claim are "1) a contract or valid business expectancy; 2) defendant's knowledge of the contract or relationship; 3) a breach induced or caused by defendant's intentional interference; 4) absence of justification; and 5) damages." *Ozark Emp. Specialists, Inc. v. Beeman*, 80 S.W.3d 882, 893 (Mo. App. W.D. 2002). A valid

20

business expectancy entails "a probable future business relationship from which there is a reasonable expectancy of financial benefits." *Id.* (quoting *Henson v. Truman Med. Ctr., Inc.*, 62 S.W.3d 549, 553 (Mo. App. W.D. 2001)). [T]he expectancy must be valid or reasonable and cannot be too indefinite or remote."[7] *Id.*

Usera moved for summary judgment on Johnson's business expectancy claim on the basis that Usera did not induce or cause a breach of Johnson's business expectancy. Usera's statement of uncontroverted material facts in support of his motion for summary judgment contains six numbered paragraphs directed at Johnson's business expectancy claim. Those paragraphs negate two elements of Johnson's claim—(1) intentional interference by Usera and (2) resulting in recoverable damages by Johnson.[8] On appeal, Johnson does not challenge those facts as controverted, immaterial, or insufficient, and his additional facts, which are the sole focus of his point on appeal, do not themselves controvert these elements of a business expectancy claim.

Thus, as to Johnson's claims of breach of contract, defamation, and tortious interference with a business expectancy,[9] Johnson's argument on appeal, as articulated in

---

[7] Johnson's petition contains several allegations of tortious interference with a business expectancy that are simply too indefinite and remote to consider.

[8] Johnson alleged in his petition that Usera interfered with Johnson's business expectancy by attempting to limit the number of outstanding shares available to the public, and consequently to Johnson, by coordinating share purchases directly with fellow CCSB Board members. Usera's statement of uncontroverted material facts indicate that Usera did not take steps to limit the sale of shares to the public.

[9] Usera was also granted summary judgment on Johnson's claim for false light invasion of privacy. The Missouri Supreme Court "has refused to recognize false light invasion of privacy claims when the claim 'is nothing more than the classic defamation action where one party alleges the other published a false accusation concerning a statement of fact." *Smith v. Humane Soc'y of U.S.*, 519 S.W.3d 789, 803 (Mo. banc

his point relied on and the argument portion of his brief, fails because he does not demonstrate that genuine issues of material fact exist as to all the grounds raised by Usera and on which the motion court could have granted summary judgment. Because Johnson does not demonstrate that the motion court lacked a basis for granting summary judgment, we must affirm the motion court's grant. *Cent. Mo. Elec. Co-op. v. Balke*, 119 S.W.3d 627, 635 (Mo. App. W.D. 2003).

Johnson's Point II is denied.

We now turn to Usera's sole point on appeal wherein he claims the motion court erred in granting summary judgment in Johnson's favor on Usera's counterclaims for breach of contract because Johnson was not entitled to judgment as a matter of law in that Johnson's actions breached the non-disparagement clause.

### III. The motion court did not err in granting summary judgment for Johnson on Usera's counterclaims for breach of contract.

Usera alleges Johnson breached the non-disparagement clause when he announced, at the January 23, 2020 CCSB stockholder meeting, that, by signing the proxy letter, Usera had "violated the terms of the [2014] settlement agreement" and he should "admit the statements [in the Nominating Committee report] were not true, do the

---

2017) (quoting *Sullivan v. Pulitzer Broad. Co.*, 709 S.W.2d 475, 480-81 (Mo. banc 1986)). "Recovery for untrue statements that cause injury to reputation should be defamation." *Id.* (quoting *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 317 (Mo. banc 1993)). "A claim for false light invasion of privacy is properly dismissed if recovery should be in defamation." *Id.* In his amended petition, Johnson raises the same issues and seeks essentially the same reputational damages for both defamation and false light. Thus, summary judgment in Usera's favor on Johnson's false light invasion of privacy claim is appropriate.

right thing, and publicly apologize to [the Vice President]." Usera asserts Johnson also breached the non-disparagement clause when he announced, at the January 28, 2021 CCSB stockholder meeting, "this Board is spending hundreds of thousands of dollars to defend [Usera] . . . who violated a contract he and I have and I have sued him personally in Clay County . . . violated the contract and defamed [the Vice President] . . . [he] owes her an apology."

There is no factual dispute about the statements Johnson made at the two stockholder meetings; Johnson admits that he made those statements. But he argues that, as a matter of law, they do not constitute a breach of the non-disparagement clause. We agree.

"Contracts are interpreted to give effect to the intent of the parties as expressed 'by the natural and ordinary meaning of the language in the contract.'" *Pub. Sch. Ret. Sys. of Mo. v. Regions Bank Inc.*, 678 S.W.3d 684, 689 (Mo. App. W.D. 2023) (quoting *Parker v. Pulitzer Publ'g*, 882 S.W.2d 245, 249 (Mo. App. E.D. 1994)). "We interpret the words used in a contract as having their common and ordinary meaning, unless the context makes clear that a technical or special meaning was intended or unless the words used have a special meaning in the parties' trade or business." *Id.* at 689-690 (quoting *Herion Co. v. Taney County*, 514 S.W.3d 620, 626 (Mo. App. S.D. 2017)).

Applying the common and ordinary meaning of the non-disparagement clause, including the relevant definitions of "Claims" and "Lawsuit" as used therein, the non-disparagement clause prohibits Johnson and Usera from disparaging each other regarding "certain claims" Johnson asserted "against Davis/Usera arising out of [the]

23

July 2, 2012 correspondence from CCSB . . . to its stockholders" and the 2012 lawsuit itself. The non-disparagement clause does not preclude mention of the 2014 settlement agreement, which is what Johnson referenced in his 2020 and 2021 statements. Johnson's 2020 statement that, by signing the proxy letter, Usera "violated the terms of the [2014] settlement agreement," does not pertain to the Claims or Lawsuit resolved by that agreement. The same is true for Johnson's 2021 statement that Usera "violated a contract he and I have and I have sued him personally in Clay County."

The gist of Usera's argument on appeal is that the July 2, 2012 letter that was at issue in the 2012 lawsuit and the Nominating Committee's report attached to the proxy letter refer to some of the same matters. While that may be true, it does not mean that Johnson's 2020 and 2021 statements necessarily violated the non-disparagement clause. To determine whether a breach occurred, we must look at the statements actually made by Johnson. Both his 2020 and 2021 statements related to the proxy letter and Nominating Committee's report, which were not the subject of the 2012 lawsuit or the claims asserted therein. Both the 2012 lawsuit and its claims predate the proxy letter and the Nominating Committee report that are the subject of Johnson's 2020 and 2021 statements. Consequently, Usera's counterclaims fail as a matter of law.

Because there is no genuine dispute of material fact and Johnson is otherwise entitled to judgment as a matter of law on Usera's counterclaims, the motion court did not err in granting summary judgment to Johnson.

Usera's sole point is denied.

24

## Conclusion

Because no material facts are genuinely disputed and each party is entitled to judgment as a matter of law on his respective motion for summary judgment, we affirm the motion court's grant of summary judgment in favor of Usera on Johnson's claims for breach of contract, defamation, false light invasion of privacy, and interference with a business expectancy, and we affirm the motion court's grant of summary judgment in favor of Johnson on Usera's counterclaims for breach of contract.

_____
Karen King Mitchell, Judge

Thomas N. Chapman, Presiding Judge, and W. Douglas Thomson, Judge, concur.